**In re S I ACQUISITION, INC., Debtor.**

**In re The AIS COMPANY, dba Abel Contract Furniture & Equipment Co., Inc., Debtor.**

**Bankruptcy Nos. 1–85–00421, 1–85–00578.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

March 10, 1986.

Adrian Overstreet, Kammerman, Overstreet & Hurran, Austin, Tex., for S I Acquisition.

James E. Reaves, Randall & Reaves, Houston, Tex., for Eastway Delivery Service.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Bankruptcy Judge.

In this Chapter 11 case, the debtor-corporation filed a Motion to Show Cause why a creditor should not be held in contempt, under the *In re MortgageAmerica*, 714 F.2d 1266 (5th Cir.1983) holding, for serving interrogatories on non-bankruptcy co-defendants in a state court action based on a "piercing the corporate veil" theory. The matter was heard and an Order entered denying the Motion on the basis that because the cause of action was not assertable by the debtor-corporation or a trustee in bankruptcy, it was not property of the estate and was not subject to the automatic stay provision.

## FACTS

In December 1984, Eastway Delivery Service, Inc. ("Eastway") and S.I. Stationers & Interiors ("S.I.A.") entered into a contract under which Eastway was to provide a delivery service for S.I.A. By March 1985, S.I.A. was delinquent in paying Eastway as agreed under the contract terms.

After several demands for payment were made, partial payment was made to Eastway. That payment as well as a second payment to Eastway, was made from a bank account owned by Abel Contract Furniture & Equipment Co., Inc., d/b/a Abel Interiors & Stationers ("Abel").

Eastway ultimately filed a state court suit to recover the account balance and damages. The state action named S.I.A. and Abel as defendants, along with two other parties—T.P.O., Inc. and Thomas P. O'Donnell, the registered agent of all three defendant corporations. Eastway sought recovery against Abel, T.P.O., Inc., and O'Donnell on two grounds. It first alleged that S.I.A. and Abel, owned and controlled by T.P.O., Inc., were but "conduits of the parent corporation, T.P.O., ... used merely as a cloak to conceal fraud, wrongs, and injustice, and to insulate T.P.O., Inc. from legal and financial responsibility for wrongs committed by S.I.A. and other subsidiaries." The alternative pleading set out an alter ego theory, alleging that corporate actions of S.I.A., Abel, and T.P.O., Inc. were, in substance, the· personal business actions of Thomas P. O'Donnell.

While that suit was pending, S.I.A. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on August 22, 1985. Shortly after the bankruptcy filing, Eastway filed a Motion for Severence of Actions in state court requesting that S.I.A. be severed from the non-bankrupt defendants because 11 U.S.C. § 362 would otherwise stay the state court litigation.

Eastway next served interrogatories in the state court action. It served only the non-bankruptcy defendants and not S.I.A. S.I.A. countered with a "Motion to Show Cause," filed in the United States Bankruptcy Court as to why Eastway should not be held in contempt for violation of the automatic stay.

After a hearing on S.I.A.'s motion, the Court took the matter under advisement to consider two issues: (1) whether the state court suit to pierce the corporate veil based on an alter ego theory fell within the aegis of the holding in *The American National Bank of Austin v. MortgageAmerica Corporation (In re MortgageAmerica)*, 714 F.2d 1266 (5th Cir.1983) so as to constitute litigation prohibited by 11 U.S.C. § 362(a); (2) Whether the filing and service of the interrogatories upon the severed co-defend-

ants in a suit in which the Debtor was a party constituted a contumacious violation of the automatic stay. Obviously, the second issue can be reached only if the first is answered in the affirmative.

There are two additional facts, not part of the contempt pleadings, that are relevant to this Memorandum Opinion. On October 25, 1985, Abel filed for relief under Chapter 11, and, in February 1986, the Court substantively consolidated the S.I.A. and Abel bankruptcy cases.

## DISCUSSION

S.I.A.'s argument concerning the applicability of the automatic stay rests on a single case, *In re MortgageAmerica*. A thorough review of that case is, therefore, essential.

### 1. In Re MortgageAmerica Decision

*MortgageAmerica* originally began as a state court action in which the American National Bank of Austin obtained a jury verdict for about $200,000.00. The corporate debtor could not satisfy the judgment and was eventually adjudicated following an involuntary petition. The Bank, while pursuing the Debtor, began to pursue Long, sole shareholder of MortgageAmerica. The suit against Long, filed to recover on the judgment rendered against MortgageAmerica, was based upon three causes of action: the "corporate trust fund" doctrine, the "denuding the corporation" theory and the Texas Fraudulent Transfers Act (TEX. BUS. & COM.CODE ANN. §§ 24.02–03 (Vernon 1968)). Each cause of action rested upon allegations that Long had caused the Debtor to transfer Debtors' assets to Long or to third parties for Long's personal benefit, all such transfers being frauds on creditors.

The Debtor, MortgageAmerica, asserted that the protection of the automatic stay extended to the proceedings against Long. The Bank countered, arguing that collection on the judgment from Long personally, rather than from his insolvent company, was not stayed. The Bank reasoned as

follows: the three causes of action accrued solely to creditors in their individual capacities and not to the corporation under Texas state law; thus the causes of action were not "property of the estate" under the Bankruptcy Code; therefore, collection efforts were not stayed.

The Fifth Circuit opinion examined each of the asserted causes of action to determine whether each could be considered property of the debtor corporation and thus exercisable only by the trustee. Alternatively, even if not property of the debtor, the Fifth Circuit considered whether assertion of the claims violated the provisions of the automatic stay.

Circuit Judge Randall, in affirming the District Court ruling, held that the causes of action under "corporate trust fund" doctrine and "denuding the corporation" theory remained rights of the debtor corporation and that the debtor corporation maintained a continuing legal or equitable interest in property fraudulently transferred from its assets. Therefore, the Bank's actions affected "property of the estate" and fell within the stay provisions of 11 U.S.C. § 362.

In addressing the "corporation trust fund" doctrine, Judge Randall noted that, historically, the doctrine "was established principally to permit a court of equity to marshal and distribute a corporation's assets upon its insolvency and dissolution in much the same way as would a modern bankruptcy court." *In re MortgageAmerica*, 714 F.2d at 1269 (citing *Wood v. Drummer*, 30 F.Cas. 435, 436–37 (C.C.D.Me.1824) (No. 17,944) (Story, Circuit Justice)). In Texas, recognition of the doctrine exists statutorily under the Texas Business Corporation Act. *See* TEX.BUS.CORP.ACT ANN. arts. 7.05(A), 7.06(A)(3), 7.09 (Vernon 1980 & Supp.1982) (noting relationship of doctrine to dissolution where action is right of corporation which can be brought by creditors and shareholders where moneys recovered are distributed pro-rata first to creditors and then to shareholders following usual priority rules).

Likewise, the "denuding the corporation" theory follows the "corporation trust fund" doctrine under Judge Randall's analysis. *See MortgageAmerica*, 714 F.2d at 1271; *see also Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 632 (Tex.Civ.App.—Houston 1973, no writ). Personal liability may be imposed under the "denuding" theory upon those in control who use their power for personal rather than corporate benefit.

Since, under either theory, it is the corporation that has been defrauded, the right to sue under such a cause of action vests in the corporation itself and constitutes a "legal or equitable interest" that passes to the estate under 11 U.S.C. § 541. Such an action may be brought only by the trustee, who represents the corporation in bankruptcy, and "who is then charged with prosecuting it for the benefit of *all* creditors and shareholders." *Id.* at 1276.[1]

The third cause of action asserted by plaintiff-appellant under the Texas Fraudulent Transfers Act required a different analysis by Judge Randall. The court chose not to rely solely on 11 U.S.C. § 544(b) (trustee may exercise power of unsecured creditor to avoid fraudulent transfers of debtor's property if applicable state law confers such a power) but looked to the overall relationship between the policies behind the Bankruptcy Code and various state law causes of action.

Unlike the two previous theories, under Texas law the action is assertable only by the debtor's creditors, but the relief of the successful claimant goes to the transferred property (which continues in the debtor corporation) and entails no remedy via personal liability on those responsible for the transfer. *See id.* at 1272.

However, one of "the prime bankruptcy polic[ies] that pervades virtually every provision of the Code is that of 'equality of

---

**1.** The two theories are distinguished in Texas courts by using the "denuding" theory where the debtor corporation was not insolvent before the improper transfer of corporation assets. *See MortgageAmerica,* 714 F.2d at 1272 n. 5.

distribution among creditors,' and, conversely, one of the principal bankruptcy *betes noires* is 'race of diligence' of creditors to dismember the debtor before its assets are exhausted." *Id.* at 1274 (citations omitted). Accordingly, the Court decided for the purpose of resolving the dispute over the creditor's cause of action stemming from the Texas Fraudulent Transfers Act, that while the Act's remedies are assertable only by the creditor, permitting such a cause of action in state court would violate the intentions of Congress when it enacted the Bankruptcy Code.

> We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a 'legal or equitable interest' in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code. The automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed. This result also does the most to further the fundamental bankruptcy policy of equitable distribution among creditors. See 11 U.S.C. § 726.

*Id.* at 1275.

Because the fraudulently transferred property (or its proceeds) continues in the debtor, under the Bankruptcy Code the action is property of the estate as defined under 11 U.S.C. § 541(a)(1) ("all legal or equitable interest of the debtor in property as of the commencement of the case") or § 541(a)(3) ("any interest in property that the trustee recovers under section ... 550 ... [under section 544, ... the trustee may recover, for the benefit of the estate, the property transferred]").

Hence, under the Bankruptcy Code, once bankruptcy is filed, the petition "operates as a[n] [automatic] stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3). Property of the estate as indicated by the legislative history of section 541(a)(1) includes "all kinds of property, including tangible or intangible property, *causes of action* ..., and all other forms of property currently specified in section 70a of the Bankruptcy Act..." H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS at 5787, 6339 (emphasis added). Section 70a of the Bankruptcy Act of 1898 included *"property transferred* by [the debtor] in fraud of his creditors."  (emphasis added).

The Fifth Circuit reached its decision because all three causes of action asserted by the Bank were property of the bankruptcy estate; therefore the automatic stay clearly applied.

### 2. *MortgageAmerica Distinguished By Respondent*

In the present case respondent Eastway, maintains that the holding in *MortgageAmerica* is narrowly confined to causes of action based upon fraudulent transfers. More specifically Eastway asserts that *MortgageAmerica* was decided solely on the question of a creditor's standing to bring an action outside bankruptcy against the recipient of assets fraudulently transferred from the debtor corporation. This limited application of *MortgageAmerica* is reinforced, according to Eastway, by Judge Randall's restatement of *MortgageAmerica* of *Carlton v. BAWW, Inc.,* 751 F.2d 781 (5th Cir.1985):

> In *In re MortgageAmerica Corp.,* 714 F.2d 1266 (5th Cir.1983), we examined the effect of the transferor's intervening bankruptcy on a creditor's state-law attempts to void a fraudulent transfer. We held that property that the debtor has fraudulently conveyed remains "property of the estate," *see* 11 U.S.C. sec. 541(a)(1): "The automatic stay under [11 U.S.C.] section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed [by the transferor]." *Id.* at 1275.

... Bankruptcy simply caused that right to vest in the trustee and placed the future of this lawsuit within the control of the bankruptcy court. *See In re MortgageAmerica Corp.*, 714 F.2d 1275 (citing *Glenny v. Langdon*, [8 Otto 20, 30] 98 U.S. 20, 30, 25 L.Ed. 43 (1878) ). at 785.

Eastway asserts that its state court action is based upon "piercing the corporate veil"; i.e., that all defendant corporations are either "mere conduits" or the alter ego of Thomas P. O'Donnell or the parent corporation T.P.O.

In distinguishing *MortgageAmerica* from the present case, Eastway relies heavily on footnote 10 of that opinion. There, the Fifth Circuit dealt only in passing with the question of standing to bring an action based on "piercing the veil" rationale. However, footnote 10 appears to distinguish such an action from the recovery of fraudulent transfers:

> ... in *Murdock v. Allina (In re Curina Int'l.)*, 15 B.R. 993 (Bkrtcy.S.D.N.Y. 1981), the bankruptcy court held that it did not have jurisdiction under 28 U.S.C. sec. 1471 to adjudicate a claim brought by the plaintiff-creditor directly against two corporate officers and shareholders on an alter ego ("piercing the corporate veil") theory. That fact situation, too, is far removed from the present one.

*Id.* at 1277.

S.I.A.'s review of that footnote indicates that, contrary to the position of Eastway, the Fifth Circuit distinguishes *Curtina* on the basis that the Bankruptcy Court might not have had jurisdiction under Title 28 U.S.C. to adjudicate the claim. S.I.A. argues that the comment in footnote 10 does not speak to the issue of whether or not the claim is property of the estate.

■ S.I.A.'s argument is not satisfactory. This Court is a court of limited jurisdiction. Under 28 U.S.C. § 1334, this Court may not entertain jurisdiction over a third-party controversy which does not relate to a matter pertaining to the bankruptcy, the debtor or its property, or matters in which the trustee asserts an interest. *See, e.g., Assoc. Electronic Supply Co. of Omaha v. C.B.S. Electronic Sales Corp.*, 288 F.2d 683, 684 (8th Cir.1961); *see also Central States Corp. v. Luther*, 215 F.2d 38 (10th Cir.1954); *In re Burton Coal Co.*, 126 F.2d 447 (7th Cir.1942). In the context of this case, the Court has jurisdiction only if the cause of action asserted by Eastway is property of the estate. Therefore, whether one considers the issue on a procedural or substantive level, the Court must first determine whether Eastway's cause of action belong to the estate.

### 3. "Piercing The Corporate Veil"

The cause of action, "piercing the corporate veil," is a theory of liability used to extinguish the legal entity distinction of the corporation from its individual members or stockholders. The separate identity of the corporation from those persons composing it is a privilege conferred by law, introduced for the purposes of convenience in commerce and industrial growth, and to subserve the ends of justice. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1162 (5th Cir.1983); *Berl v. Crutcher*, 60 F.2d 440, 443 (5th Cir.1932).

■ However, the concept of separate identity cannot be extended beyond underlying policy considerations or used in support of subversive ends. If so invoked, the legal separateness will be disregarded by the court (often referred to a "piercing the corporate veil"), and the corporation and the individual or individuals owning all of its assets and/or stock will be treated as identical.[2]

■ Under the "alter-ego" theory of piercing the corporation veil, courts disregard the corporation's separate legal existence to reach its controlling shareholder(s) on the basis that the corporation is merely an alter ego or business conduit of

---

2. In bankruptcy, the doctrine of "piercing the corporate veil" has been specifically upheld by the United States Supreme Court in *Sampsell v.* *Imperial Paper & Color Co.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941), *reh'g. denied*, 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552.

its owner(s). In other words, a corporate entity may be disregarded where there is such a unity of interest and ownership that the separate personalities of the corporation and the shareholder(s) no longer exist. *See Walkovszky v. Carlton,* 18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (1966) (individual who uses control of the corporation to further own business rather than corporate business liable for corporation's acts upon principle of *respondeat superior*).

■ Each particular "piercing the veil" action to disregard the corporate entity relies upon the individual facts of the case, and, usually no single factor is conclusive evidence in the determination of whether or not to disregard a corporate entity. Among the factors considered by courts are the acts of single or controlling shareholders who totally dominate or control the corporation and use or appropriate corporate property or funds for personal ends; commingling corporate and noncorporate assets; or preferential treatment of such dominate owners who are also creditors. *See generally* 18 Am.Jur.2d *Corporations* § 48 (1985).

■ The same alter ego theory of piercing the corporate veil can apply to corporations dominated by affiliated corporations. For example, one corporation may be an agent or mere instrumentality of another corporation. The veil is pierced between the affiliated corporations, whether to create enterprise liability for aggregate (sister) corporations or to treat parent-subsidiary as if one entity existed. *See, e.g., Fitz-Patrick v. Commonwealth Oil Co.,* 285 F.2d 726 (5th Cir.1960) (corporate fiction frequently disregarded when parent dominates subsidiary so that subsidiary is but mere agent or instrumentality of parent).

■ As with holding an individual liable for the acts of the corporation, no single circumstance or factor is generally conclusive on the issue of a separate existence between the parent corporation and its subsidiaries or sister corporations. However, there is a general checklist of circumstances and facts tending to show that one corporation exercised substantial or total domination over a subsidiary or affiliated corporation: payment of expenses by one for the other, common officers and/or directors, stock ownership by parent, failure of subsidiary to maintain formalities of separate corporate existence, etc. *See generally* 18 Am.Jur. *Corporations* § 59 (1985).

In the present case, Eastway's state court petition follows both avenues of piercing the corporate veil individual and enterprise liability. Although only two factors from the checklist of circumstances considered by courts to disregard the corporate entity have been pled by Eastway (substantial ownership by single individual and payment of corporate debts by affiliate corporation), Eastway's interrogatories, which form the basis of this proceeding, seek to uncover other circumstances that would support its piercing the corporate veil action in state court.[3]

### 4. Who Can Bring An Action Under "Piercing The Corporate Veil?"

■ Generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders. Piercing the veil "is basically an equitable doctrine available to

---

**3.** The Court would find that the subsequent substantive consolidation of the Chapter 11 bankruptcy cases of S.I.A. and Abel would lend support to such an action. S.I.A.'s Motion for Substantive Consolidation, filed December 1, 1985, asserted that both S.I.A. and Abel were wholly-owned subsidiaries of T.P.O. and were operated with a joint central office, under a central line of credit with a secured lender, and inventory owned by one company was sold by the other company at retail. Economic integration of the components of a corporate group of their common conduct of a unitary business, notwithstanding formal organization of the components as separate legal entities, has been an important factor in both substantive consolidation proceedings and "piercing the veil" actions. In fact, two courts of appeal have agreed that substantive consolidation is no more than "piercing the veil." *See In re Gulfco Inv. Corp.,* 593 F.2d 921, 928–29 (10th Cir.1979); *In re Continental Vending Mach. Corp.,* 517 F.2d 997, 1000 (2d Cir.1975), *cert. denied sub nom. James Talcott, Inc. v. Wharton,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). *See generally* P. Blumberg, *The Law of Corporate Groups* (1985).

creditors of the corporation whose separate existence is being questioned. It generally is not available to the corporation itself or its shareholders who now regret having formed the corporation; it also may not be available to the Bankruptcy Trustee of the corporation whose separate existence is being questioned, though individual creditors may be able to assert a claim under the PCV (i.e., piercing the corporate veil) doctrine." *Stodd v. Goldberger*, 73 Cal. App.3d 827, 141 Cal.Rptr. 67 (1977). R. Hamilton, *Corporations* 108 (1982); *see also In re Green Valley Seeds, Inc.*, 27 B.R. 34 (Bankr.D.Or.1982) (piercing of corporate veil does not give rise to corporate claim and trustee cannot pursue it).

In *Stodd v. Goldberger, supra*, the trustee's standing to bring the action disregarding the corporate entity was challenged by defending general partners of the debtor corporation. The California courts ruled against the trustee:

> Plaintiff, as trustee in bankruptcy of a bankrupt corporation cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually ...

*Id.* 73 Cal.App.3d at 833, 141 Cal.Rptr. 67.

The underlying rationale is that 11 U.S.C. § 541(a), which defines the bankruptcy estate, does so by reference to assets of the debtor. Under § 704, the trustee is authorized to collect assets or enforce rights owned by the debtor. Therefore, under the Bankruptcy Code, express authority to sue extends only to assets of the corporation, and there is no general authorization for the trustee to act on behalf of the general creditors.

Older cases have restricted rights of the trustee to those acquired by "standing in the shoes of the corporation." If a cause of action under state statute ran in favor of

creditors and not the corporation, the trustee was unable to sue. *See Rockwood v. Foshay*, 66 F.2d 625, 629 (8th Cir.1933), *cert. denied*, 291 U.S. 666, 54 S.Ct. 440, 78 L.Ed. 1057 (1934); *Seegmiller v. Day*, 249 F. 177 (7th Cir.1918); *Courtney v. Genger*, 228 F. 859 (2d Cir.1915); *In re Jassory Co.*, 178 F. 515 (2d Cir.1910).

However, where a state statute creating liability is construed not to assert a corporate right (and, therefore, a corporate asset), case law is in conflict. Some cases allow the trustee to act for the benefit of creditors or of a bankruptcy estate. *See, e.g., Henderson v. Rounds & Porter Lumber Co.*, 99 F.Supp. 376, 380 (W.D.Ark. 1951) (creditor suing individually joined by trustee asserting claims of other creditors for the benefit of the estate); *Babbett v. Read*, 236 F. 42 (2d Cir.1916).

The general view, though, holds that the trustee does not represent creditors for the purpose of collecting running exclusively to them. *See Harrigan v. Bergdoll*, 270 U.S. 560, 564, 46 S.Ct. 413, 414–15, 70 L.Ed. 733 (1926); *Rockwood v. Foshay*, 66 F.2d 625, 629 (8th Cir.1933), *cert. denied*, 291 U.S. 666, 54 S.Ct. 440, 78 L.Ed. 1057 (1934); *see also In re Western World Funding, Inc.*, 52 B.R. 743, 775 (Bankr.D.Nev.1985) (although trustee has rights of creditors under § 544, "if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.")[4]

Unlike the situation involving fraudulent transfers of a debtor's property presented in *MortgageAmerica*, this Court finds that the trustee has no equivalent representative standing where a creditor's claim is based on an alter ego theory. Absent specific statutory authorization in the Bankruptcy Code, this Court is persuaded to limit the trustee's capacity as a representative of the creditors.

It is true in a sense that a trustee in bankruptcy represents creditors of the bankrupt. He does so, however, only in

---

**4.** However, the trustee in *Western World* was able to assert an alter ego cause of action based on the court's interpretation of section 544 of the Bankruptcy Code. Even though declining to

follow *Stodd v. Goldberger,* the *Western World* court did not accord the trustee an *exclusive* right to assert a claim based on an alter ego theory. See *Western World,* 52 B.R. at 781–82.

a limited way. He represents the creditors only in matters relating to marshaling, preserving, or otherwise administering the assets of the estate in bankruptcy. He is not an appropriate general representative of creditors ... The cases are uniform in recognizing that a trustee in bankruptcy may not enforce rights of action which belong to the creditor individually because they are not rights in which the bankrupt claims an interest and are not assets of the estate in bankruptcy ...

*Stodd, supra,* 73 Cal.App.3d at 835, 141 Cal.Rptr. 67 (citations omitted).[5]

Therefore, the Court concludes that Eastway's cause of action under the alter ego/piercing the corporate veil theory does not give rise to a claim assertable by the debtor-in-possession S.I.A. or a trustee in bankruptcy under 11 U.S.C. § 544. ·

In so holding, the Court would note that "piercing the corporate veil" is clearly an inadequate jurisprudential theory due to the increasing complexities of modern business. The narrow basis of the theory underlying piercing the veil jurisprudence will not, in this or any other case, allow a court to accomplish Judge Randall's "basic, commonsense principle of pro-rata distribution," *In re MortgageAmerica,* 714 F.2d at 1278. Rather, as in cases such as this one, a rush to judgment results.

The traditional view that each separately chartered corporation must be treated as a separate legal "entity" conflicts with the reality of modern corporate "enterprises" conducting unitary business through numerous separately incorporated subsidiaries. Bankruptcy courts are seeing an increase in large parent corporations with multi-tiered subsidiaries. The "increased judicial recognition of the widespread use of interrelated corporate structures by subsidiary corporations operating with a parent entity's umbrella for tax and business planning purposes" will soon force courts to respond to this transition from entity to enterprise law. *In re Vecco Constr. In-*

*dus., Inc.,* 4 B.R. 407, 409 (Bankr.E.D.Va. 1980).

The "entity" concept and "piercing the corporate veil" jurisprudence must be replaced by an "enterprise" theory of law where evaluation of a cause of action relies on broader equitable principles governing conduct of fiduciaries on either an individual or interrelated corporate basis.

In concluding that the cause of action asserted in state court by Eastway is not a claim assertable by the debtor-corporation or trustee in bankruptcy, the Court further finds that the claim is not property of the bankruptcy estate under 11 U.S.C. § 541. Therefore, the automatic stay provision of 11 U.S.C. § 362(a) does not apply to prevent the filing and serving of interrogatories upon non-bankruptcy co-defendants. Respondent's actions were, therefore, not contumacious.

Finally, in light of the Court conclusions, the Debtor's Motion to Show Cause is denied.

Ordered accordingly.

---

5. *But see Long v. McGlon,* 263 F.Supp. 96 (D.C.S. C.1967) (no prejudice to corporate creditors where trustee brings suit to impose personal liability on shareholders of nominal corporation for corporate debts).