By the Court, Gridley, J.
The plaintiff claims title to the premises in question in this suit, as the purchaser at a mortgage sale, under a statute foreclosure, on the 14th day of January, 1849. The mortgage bears date on the 18th day of December, 1848, and was executed to J. L. Bagg, for a part of the purchase price of the premises, and was the oldest lien upon them. The plaintiff declined to take judgment against John B. Kline, provided the objections taken to the maintenance of the action against the defendants were held to be sufficient to defeat the suit. The referee so held, and judgment was entered, in favor of the defendants generally. The ground on which a new trial is asked for is, that the referee decided that there was no proof that a legal notice of the foreclosure had been served on the defendants, other than John B. Kline; and that the mortgage being unforeclosed, as to them, no action of ejectment could be maintained against them, by the mortgagee, pursuant to the statute. (2 R. S. 237, § 57.) There are other questions, respecting the rights of those defendants, that might arise under another state of facts; but the single question presented for our decision, upon this appeal, is, whether the mortgage was foreclosed, as to those defendants.
I. We have heretofore had occasion to express an opinion upon the effect of an entire omission to serve a notice upon subsequent grantees and mortgagees, pursuant to the provisions of the act of 1844. In Van Slyke v. Shelden, (9 Barb. 278,) we held that by the first section of the act of 1844, (Laws of 1844, p. 529,) the service of a notice, as required by that section, was made a condition of the foreclosure. The third section of the “ act for . the foreclosure of mortgages by advertisement,” (2 R. S. 449,) provides that “ notice that such mortgage will be foreclosed by a sale of the mortgaged premises, or some part thereof, shall be given as follows:” (1.) By a publication in a newspaper printed in the county. (2.) By posting on the court *11 house door. (3.) By serving a notice on the mortgagor, subsequent grantees and mortgagees, and judgment creditors subsequent to such mortgage, in the manner prescribed by the act of 1844. The act of 1844 amends the act for the foreclosure of mortgages, by enacting that the provision for .serving a notice on the mortgagor, <fcc. shall form a third subdivision of the third section of that act, making it necessary thereafter to adopt the three modes of giving notice prescribed by the act as amended, as a condition of the foreclosure. The consequence of this amendment is that it is just as necessary to serve a notice on the mortgagor, subsequent grantees, &c. as it is that the notice should be printed in a newspaper published in the county, or posted on the court house door. An omission of either of those statutory requisites, it is needless to say, will render the foreclosure utterly void.
II. In the present case the manner of making service of the notice of the foreclosure was, by depositing the notices in the post office, directed to the several defendants who were subsequent grantees, at Syracuse, where they all resided. The provision of the statute is that notice shall be given (1) by serving the same personally ; (2) by delivering the notice to some person of suitable age, at the dwelling house of the party ; (3) by serving a copy of such notice upon such persons at least twenty-eight days prior to the time therein specified for the sale, by depositing the same in the post office properly folded, and directed to said persons at their respective places of residence. The referee held, under this statute, that notices could not be legally served by depositing them in the post office unless they were designed to be sent by mail. That where notices were to be served on persons residing in the same city or village, the notice must be served personally, or on a person of suitable age at the dwelling house of the party to be charged. To this ruling of the referee there was an exception. And it is now urged, in support of the objection, that the statute, by its terms, applies as well to persons residing in the same place where the letter is deposited, as to those residing elsewhere, to whom the notice must be sent by mail; and many authorities are cited to *12 show that when the words of a statute are clear and certain, the courts have no power to enlarge or to restrict its interpretation. We think however, that the referee was right in his ruling. We believe in a reasonably strict construction of statutes ; but nothing is more common than to restrict the general words of a statute to those cases which it was obviously intended to embrace. The statute against usury, for instance, declares in.the most absolute terms all securities affected with usury to be void. Yet it is well settled that those securities arc only void between the parties and those who represent them. A stranger cannot avail himself of this defense. Again; there " are statutes which declare judgments, deeds and contracts void ; but it is seldom that the courts hold them absolutely void. They are only voidable, and may be avoided only by creditors and purchasers. JSTow these and other statutes that might be mentioned, though by their words they are applicable to all cases, are constantly so construed as to apply to those cases only which they were intended by their framers to include. It is laid down by Bacon, in his Abridgment, 4th vol. pp. 649, 650, that a remedial statute should have a liberal and equitable construction. In some cases the letter of an act of parliament is restrained by an equitable construction; in others it is enlarged. In others the construction is contrary to the letter. Again; “ a statute is to be so construed as to have a reasonable effect, agreeably to the intent of the legislature.” (23 Pick. 93. 22 Id. 227.) In construing a statute the intent of the. makers is to govern, although such construction may seem contrary to the letter. (Jackson v. Collins, 3 Cowen, 89.) By the fourth canon of construction mentioned by Bacon, .it is laid down that the common law ought to be regarded, in the construction of a statute. And when the, provision of a statute is general it is subject to the control and order of the.common law. (4 Bacon's Abr. Statutes, p. 647.)
The object .of the framers of the act requiring notice to be given to all parties who might be affected by a sale of the premises, was to render a foreclosure by advertisement as effectual as -it. was ip the • court of chancery, where, all.. parties- were *13 served-with process, and to provide that actual notice should be brought home to all persons whom the practice of the court of chancery would require to be made parties. It had been found by experience that the publication, in a newspaper, and by posting a notice on the court house door, sometimes failed to give actual information to the parties interested. People seldom watched the notices on the court house door; and a notice published in an obscure and distant paper was not ordinarily seen and read by those interested. Therefore the act provided for the adoption of a more effectual means to bring home the notice to the knowledge of the parties, and required an actual service of the notice on others. Three modes were provided; first, by personal service. But as the individual was not always to be found at home, it provided secondly, that the notice might be delivered to some person of suitable age, at his dwelling house. Again; the parties might be distant, and numerous, and scattered ; and therefore, in the third place, a service by mail was allowed. This is rendered manifest by the provision which requires the notice to be mailed twenty-eight days before the day of sale, when only fourteen days’ personal service was required. Again; the notice is required to be folded and “ directed to the said persons, at their respective places of residence”—implying most strongly that the notices were to be transmitted by mail.
'Again; when this statute was passed, the 9th rule of the standing rules of the supreme court, provided that a notice or paper might be served by putting it in the post office, directed to the attorney at his place of residence, &e. and in such case double the time of service was required to be given. In the case of serving a notice of protest on an indorser, several cases had been decided when this act was passed, holding that a service by putting the notice into the post office at the place of the indorser’s residence, was insufficient. (Ireland v. Kip, 10 John. 490. Louisiana Bank v. Powell, 6 Martin’s Rep. N. S. 506. Laporte v. Landry, 5 Id. 359. Ransom v. Mack, 2 Hill, 590, 1. 4 Id. 132.) Judge Bronson cites the language of Martin, J. in Laporte v. Landry, and adopts it, “ that the post office was not a legal place of deposit for notices; but that *14 service in that mode was sufficient where notices may .he conveyed by mail.” In Sheldon v. Benham, (4 Hill, 133,) Bronson, J. says, “ But as Babcock and Bonham' both lived ha the same village, I think the service should have been personal, or by leaving the notice at the dwelling house or place of business of the indorser, and that service through the post office is not sufficient.” Now there is no reason for this distinction in the case of service of notice on an indorser that does not apply to the notices which the act requires to be served on incumbrancers, in a mortgage case. The law stood thus when the statute in question was enacted. Now suppose we adopt Bacon’s rule, and construe the statute according to the lights derived from what the common law was, before the enactment; or, suppose we look to the probable intent of the framers of the act, or suppose we look to the peculiar wording of the statute itself; and we shall come to the same conclusion, that service of notice by mail, to be good service, must be made only when the notice is directed to a person residing in a different place, and is deposited in the post office to be sent by mail. The statute never intended the post office as a general place of deposit for all such notices as were to be served on persons residing in the same place; but the mode of service was only designed to be adopted when the notice was to be sent by mail.
[Oneida General Term,
January 5, 1852.
Gridley, Pratt, W. F. Allen and Hubbard, Justices.]
We are of the opinion, therefore, that the service of notice offered to be proved was not legal service, and the referee was right in rejecting it. A new trial must be denied.