Coy THOMAS *v.* SOUTHSIDE CONTRACTORS, INC. et al

76-165                                               543 S.W. 2d 917

Opinion delivered November 29, 1976
(Division I)
[Rehearing denied January 10, 1977.]

*Keith Rutledge,* for appellant.

*Bennett & Purtle,* for Southside Contractors, Inc., Walters Construction Co. and Miller Mutual Ins. Co.; and *Laser, Sharp, Haley, Young & Boswell,* for Norhhwestern National Ins. Co., appellees.

GEORGE ROSE SMITH, Justice. The appellant, Coy Thomas, is the claimant in this workmen's compensation case. At the time of his injury he was drilling rock with a

jackhammer, in the process of excavating a trench for the installation of a sewer line to serve a residence that was being built. Walters Construction Company was the prime contractor for the residential project. Southside Contractors, Inc., the appellant's employer, was the subcontractor for the installation of the sewer line. Thomas's claim for compensation is asserted both against the prime contractor and its insurance carrier and against the subcontractor and its insurance carrier. The Commission denied the claim altogether, finding *(a)* that the subcontractor's insurer had canceled its policy before the accident, and *(b)* that the claimant is estopped to assert liability on the part of the prime contractor. Upon this appeal Thomas challenges both findings.

There is substantial evidence to support the Commission's finding that the subcontractor's coverage had been canceled before the claimant was injured. The risk had been assigned to the subcontractor's insurer pursuant to Ark. Stat. Ann. § 81-1309 (Repl. 1960). That insurer, owing to its inability to obtain an audit of the subcontractor's payroll, applied to the Commission for cancellation of the policy. The Commission, acting under Section 81-1309 (d), notified the subcontractor that its policy would be canceled if the Commission "does not hear from you within ten days from the date of this letter." There was no reply to that letter. Despite some uncertainty about the date of cancellation, the Commission was justified in finding that the policy had been canceled. Upon this point the subcontractor's local insurance agent testified that he discussed the proposed cancellation with the president of the subcontractor, a corporation, who said: "I guess we will have to get along without it."

A more difficult question is presented with respect to the liability of the prime contractor and its insurer. The statute provides that when a subcontractor fails to obtain compensation insurance, the prime contractor shall be liable for compensation to the employees of the subcontractor. Section 81-1306. Despite that section of the statute the Commission denied Thomas's claim, on the ground that he had dealt with the prime contractor, Walters Construction Company, as an independent contractor and that he was estopped to say that he had no part in the cancellation of Southside's compensation coverage.

We state the facts most favorably to the Commission's decision. For some time before the claimant Thomas joined the concern there had been a partnership of three or four men engaged in work involving excavations. Thomas bought out one of the partners by contributing a truck for which Thomas had paid $1,000. In January, 1971, when there were three partners, the business was incorporated upon a lawyer's recommendation and under his supervision.

Paul James was the president of the company, with Thomas being designated as vice-president. The three principals, manifestly in good faith, continued to conduct the business pretty much as a partnership, though some corporate records were kept. Excavation contracts were made orally, without formality. Here is an excerpt from the testimony of Paul James:

Q. Dealing with the decision-making process, is it not true, Paul, that the three members of the Board of Directors, yourself and Gary and Coy, somebody approaches you or Cary or Coy about doing a job, you all meet and say all right here is the job whose [sic] is going to handle it — how much are we going to get for it — right?

A. Right.

Q. And you all say, well, Coy why don't you handle this one, and the next one, Paul, you take this one — it was a joint decision by the members of the Board of Directors?

A. That is right.

James, as president of the company, was responsible for keeping the records and for obtaining workmen's compensation insurance. His home was the company's only office. Coy Thomas received take-home pay of $115 a week, paid by the company's check. Taxes and Social Security contributions were withheld. The company furnished the tools and materials that Thomas and his crew used in their work. Apparently the company never made enough money to distribute any profits before Thomas was injured.

Southside's compensation coverage was canceled as of May 6, 1973. At about that same time Henry Walters, the

owner of the prime contracting company, approached Thomas about the sewer-line subcontract, because Thomas had been highly recommended to Walters as a very competent person in that field. The oral contract was made according to Southside's usual practice. Thomas discussed it with his associates, who approved the job for the proposed price of $1,100. Walters testified that he thought he was dealing solely with Thomas. Thomas brought his own crew to the job and worked with them, as foreman, until he was hurt. Walters said he knew nothing about Southside Contractors until Paul James came up to finish the job after Thomas's injury.

When the oral contract was made, Walters asked Thomas if he had workmen's compensation insurance. Thomas replied that he did have it and, at Walters's request, promised to furnish the policy number. Walters testified that he discussed Thomas's coverage because his own insurance carrier had told him very specifically that "subcontractors either had to be covered or we had to furnish coverage." Thomas did not in fact supply the policy information. Walters testified that he would have insisted upon having that information before he paid the contract price, because if Thomas did not have coverage "we would have to pay the premium for the work that they had done, for the coverage of those employees." In actuality, Walters paid the agreed contract price to Southside without deducting any amount for the premium and without inquiring about the coverage. Of course, by then Thomas had been seriously injured on the job, and a deduction of the premium from the final settlement would have carried an inplication of liability on the part of the prime contractor and its insurer.

We can find no substantial evidence to support the Commission's denial of Thomas's claim. The Commission found, first, that Thomas dealt with Walters as an independent contractor rather than as an employee of Southside. The true issue, however, is not whether Thomas was an independent contractor, for that is ordinarily the status of any subcontractor. Rather, the issue is whether Walters's contract was with Thomas individually or with the Southside corporation. There is no proof that Thomas held himself out as acting on his own. Apparently the matter was simply not mentioned,

which is not unusual. A customer of a small grocery store may believe that he is dealing with a sole proprietor, but that belief makes no difference if the store is actually owned, say, by a family corporation. A corporate entity is to be disregarded only if the corporate structure is illegally or fraudulently abused to the detriment of a third person. *Rounds & Porter Lbr. Co.* v. *Burns*, 216 Ark. 288, 225 S.W. 2d 1 (1949). Here there is no evidence that the Southside corporate entity was so used. The Workmen's Compensation Commission of course has final authority upon disputed issues of fact, but here the Commission made an error of law in its interpretation of an undisputed fact situation. The corporate entity should not have been disregarded.

Neither can we sustain the Commission's conclusion that Thomas is estopped to deny that he knew that the compensation policy had been canceled. The testimony is not definite, but the cancellation must have occurred not very long before or not very long after the oral subcontract was made. Walters testified that he asked Thomas about the coverage and was told that it existed. Thomas testified that he did not remember such a conversation, but he stated candidly that if the question had been asked he would have said that there was coverage. He testified, without contradiction, that he knew nothing whatever about the cancellation; that was Paul James's responsibility. The only disinterested witness with regard to this issue was the insurance agent, who said that he discussed the cancellation with James.

Even though there is no testimony that Thomas knew that the policy had been canceled, the Commission made this finding: "The president of this corporation . . . had great power to direct the activities of the corporation, but allowing this policy to lapse . . . and then not afford the claimant protection coverage without some consultation with his vice-president-employee is . . . inconceivable." Thus the Commission attributed to Paul James a precise knowledge of law when it concluded that James would not have allowed the coverage of his "vice-president-employee" to lapse without some consultation between the two men. Even the members of this court have disagreed about a corporate officer's right to compensation coverage as an employee. *Brooks* v. *Claywell*, 215 Ark. 913, 224 S.W. 2d 37 (1949). It is extremely unlikely

that either James or Thomas could have realized that Thomas, an officer of the company, might be protected by the policy while he was engaged in physical labor as an employee.

Thomas established a prima facie case by proving that he was injured while working as an employee of an uninsured subcontractor. The prime contractor and its insurer assert the defense of estoppel, arguing that Thomas knowingly misrepresented the fact of compensation coverage. One who asserts an estoppel must prove it strictly; the facts cannot be supplied by inference. *Wheeless* v. *Eudora Bank,* 256 Ark. 644, 509 S.W. 2d 532 (1974). That burden of proof has not been met. To the contrary, the Commission's conclusion rests upon evidence that presents a mere choice of possibilities and is therefore not substantial. *Ellsworth Bros. Truck Lines* v. *Canady,* 245 Ark. 1055, 437 S.W. 2d 243 :1969); *Ark. Power & Light Co.* v. *Cash,* 245 Ark. 459, 432 S.W. 2d 853 (1968). We are unwilling to sustain a denial of compensation that rests merely upon speculation.

Reversed.

We agree. HARRIS, C.J., and FOGLEMAN and JONES, JJ.