816 F.2d 1222
 55 USLW 2602, 16 Collier Bankr.Cas.2d 1148,
16 Bankr.Ct.Dec. 134, Bankr. L. Rep. P 71,780
 In re OZARK RESTAURANT EQUIPMENT CO., INC.
James G. MIXON, Trustee, Appellant,
v.
Bruce ANDERSON, Elmer Dale Yancey, Kenneth Eads, Robert
Whiteley and Anderson Cajun's Wharf, Appellees,
James G. MIXON, Trustee, Appellant,
v.
ANDERSON CAJUN'S WHARF, Appellee,
James G. MIXON, Trustee, Appellant,
v.
Ed YANCEY, Bruce Anderson and Kenneth Eads, Appellees.
 No. 86-1729.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1987.
Decided April 14, 1987.
Rehearing and Rehearing En Banc Denied July 6, 1987.
 
 Jill R. Jacoway, Fayetteville, Ark., for appellant.
 Raymond C. Smith, Fayetteville, Ark., for appellees.
 Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 The sole issue in this appeal is whether a Chapter 7 bankruptcy trustee has standing to assert, on behalf of the debtor corporation's creditors, an alter ego action against the principals of the corporation. The district court[1] held in the negative. For the reasons discussed below, we affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 In September of 1980, Bruce Anderson and Elmer Dale Yancey purchased Ozark Restaurant Equipment Co., Inc. ("Ozark") of Springdale, Arkansas, the debtor in this case. Both were 50% shareholders and directors of the corporation; Yancey was also an officer. In addition to owning Ozark stock, Anderson owned 50% or more of the stock in a number of other companies with which Ozark did business.[2] On August 24, 1982, after an abysmal performance, Ozark filed for relief under Chapter 7 of the Bankruptcy Code.
 
 
 4
 In October of 1982, the Chapter 7 trustee of Ozark filed three adversary proceedings which were subsequently consolidated for trial before the bankruptcy court. The first proceeding was an alter ego action, which was brought solely by the trustee on behalf of all of Ozark's creditors[3] against the following defendant-principals of Ozark: Anderson; Yancey; Kenneth Eads, director and president of Ozark; Robert Whiteley, a business consultant hired by Anderson to help with Ozark's finances; and Anderson Cajun's Wharf, Inc. The trustee alleged, inter alia, that because of the defendant-principals' abuses of the corporation, the corporate veil should be pierced and the individuals should be held personally liable for Ozark's debts. The second proceeding was an action by the trustee to recover an unpaid debt from Port City Equipment Company. In the third proceeding, the trustee sought recovery of certain of Ozark's loan payments to McIlroy Bank & Trust as preferential transfers. On March 21, 1984, the bankruptcy court ordered judgment in favor of the trustee on all three claims. In re Ozark Restaurant Equipment Co., 41 B.R. 476 (Bankr.W.D.Ark.1984).[4] All defendants except Eads appealed the judgment.[5]
 
 
 5
 On May 22, 1986, the district court issued an order affirming the bankruptcy court's judgment with respect to the unpaid debt claim, but reversing the court's judgment in the alter ego action. In re Ozark Restaurant Equipment Co., 61 B.R. 750 (W.D.Ark.1986).[6] Regarding the alter ego claim, the court, relying heavily on Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), determined that a Chapter 7 trustee has no standing on his own to bring an alter ego action on behalf of the debtor corporation's creditors. Id. at 757. The court, however, remanded the case for consideration of whether the business actions which caused the bankruptcy court to pierce the corporate veil constituted transfers within the meaning of the Code and were therefore possibly recoverable by the trustee under 11 U.S.C. Secs. 547 or 548 (preferences or fraudulent transfers). Id. Ozark's trustee subsequently appealed, arguing that a Chapter 7 trustee does have standing to bring an alter ego claim on behalf of the debtor corporation's creditors.
 
 
 6
 II. DISCUSSION.
 
 
 7
 Although acknowledging that the district court had the right to raise the standing question, the trustee argues that the court's holding was incorrect as a matter of law. The trustee maintains that a Chapter 7 trustee has standing to assert an alter ego claim on behalf of the unsecured creditors of the debtor corporation based on three different areas of the Bankruptcy Code: (1) 11 U.S.C. Sec. 544; (2) 11 U.S.C. Secs. 704 and 541; and (3) 11 U.S.C. Sec. 105 and general equitable principles running throughout the Code. We begin by addressing the trustee's second argument.
 
 
 8
 A. 11 U.S.C. Secs. 704 and 541.
 
 
 9
 Section 704 of the Code outlines the duties of a Chapter 7 trustee and requires the trustee to "collect and reduce to money the property of the estate for which the trustee serves * * *." 11 U.S.C. Sec. 704(1) (emphasis added). Section 541 defines "property of the estate" and for our purposes, the relevant subsection is 541(a)(1), which defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. Sec. 541(a)(1). In arguing that Section 704 permits a Chapter 7 trustee to pursue an alter ego theory cause of action to pierce the corporate veil on behalf of the creditors of the debtor corporation, the trustee failed to acknowledge the key limiting language in Section 541(a)(1)--property of the estate comprises only "legal and equitable interests of the debtor." Id. (emphasis added). Upon further examination of Sections 704 and 541 and the nature of the alter ego action, it becomes apparent that the trustee's standing argument based on these two sections must fail.
 
 
 10
 First, it is clear that causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate. E.g., 4 Collier on Bankruptcy p 541.10, at 541-62 (15th ed. 1986). Any of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate. Id. p 704.02, at 704-6 to -7. For example, these sections give the trustee authority to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary duty, because these claims could have been asserted by the debtor corporation, or by its stockholders in a derivative action. See, e.g., Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (interpreting section 70a(6) of the old Bankruptcy Act, a predecessor of Sections 541(a)(1) and 704(1) of the Code); Koch Refining v. Farmers Union Central Exchange, Inc., 56 B.R. 242, 243 (N.D.Ill.1985); 4 Collier on Bankruptcy, supra, p 541.10, at 541-69; see also Henderson v. Rounds & Porter Lumber Co., 99 F.Supp. 376, 380 (W.D.Ark.1951) (quoting with approval 4A Collier on Bankruptcy p 70.29, at 429-33 (14th ed. 1978)). Accordingly, whenever a cause of action "belongs" to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings.
 
 
 11
 Where, however, "the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under Section 541(a) that are enforceable by the trustee [under Section 704(1) ]." 4 Collier on Bankruptcy, supra, p 541.10, at 541-69 to 541-70; accord Henderson, 99 F.Supp. at 380 (quoting the 1978 edition of Collier on Bankruptcy); In re Green Valley Seeds, Inc., 27 B.R. 34, 36 (Bankr.D.Ore.1982); see In re S I Acquisition, Inc., 58 B.R. 454, 461, 462 (Bankr.W.D.Tex.1986). In this respect, we recognize that "[g]enerally, the corporate veil is never pierced for the benefit of the corporation or its stockholders[.]" 18 Am.Jur.2d Corporations Sec. 46 (1985); accord In re S I Acquisition, 58 B.R. at 460; but see 1 Fletcher Cyclopedia on the Law of Private Corporations Sec. 41, at 388 (1983) (hereinafter "Fletcher Cyclopedia"). This general statement of the law is followed in Arkansas, where the courts have held that "[a] corporate entity is to be disregarded only if the corporate structure is illegally or fraudulently abused to the detriment of a third person." Thomas v. Southside Contractors, Inc., 260 Ark. 694, 543 S.W.2d 917, 919 (1976) (emphasis added) (citing Rounds & Porter Lumber Co. v. Burns, 216 Ark. 288, 225 S.W.2d 1 (1949)). Thus, the obligations and liabilities of an action to pierce the corporate veil in Arkansas do not run to the corporation, but to third parties, e.g., creditors of the corporation.
 
 
 12
 Further, although an action to pierce the corporate veil may be brought under a number of different theories, the "alter ego doctrine" of piercing the corporate veil
 
 
 13
 fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. [Footnote omitted.] The corporate form may be disregarded only where equity requires the action to assist a third party. [Footnote omitted.] Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his convenience. [Footnote omitted.]
 
 
 14
 1 Fletcher Cyclopedia, supra, Sec. 41.10, at 397 (emphasis added).
 
 
 15
 Because the corporate entity will be disregarded under Arkansas law only if it has been abused to the detriment of a third person, and because the nature of the alter ego theory of piercing the corporate veil makes it one personal to the corporate creditors rather than the corporation itself, it is axiomatic that the claim does not become property of the estate under Section 541(a)(1), nor is it enforceable by the trustee under Section 704(1). Accordingly, we conclude that the trustee here does not have standing under these sections to bring an alter ego action on behalf of Ozark's creditors.[7]
 
 
 16
 B. 11 U.S.C. Sec. 544.
 
 
 17
 The trustee's principal argument in this case is based on Section 544 of the Code, 11 U.S.C. Sec. 544.[8] The trustee maintains that Section 544(a), the "strong-arm clause", enables the trustee to pursue an alter ego action in his creditor's capacity, because that section gives the trustee the rights and powers of a creditor who could have obtained a judicial lien, whether or not such a creditor exists. See 11 U.S.C. Sec. 544(a)(1). Additionally, the trustee maintains that Section 544(b), which allows a trustee to avoid certain transfers of the debtor that are voidable under applicable law by a creditor holding an unsecured claim, see id. Sec. 544(b), also gives the trustee standing to pursue an alter ego action for the benefit of all creditors.
 
 
 18
 Admittedly, a trustee's rights and powers under Section 544 are extensive. We do not believe, however, that they encompass the ability to litigate claims, such as the instant alter ego cause of action, on behalf of the debtor corporation's creditors. A careful reading of Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), supports this conclusion, as recognized by the district court.
 
 
 19
 In Caplin, the Supreme Court held that a reorganization trustee lacked standing under the old Bankruptcy Act to assert, on behalf of the bankrupt corporation's creditors (debenture holders), claims of misconduct against a third party (the indenture trustee). Id. at 434, 92 S.Ct. at 1688. Having recognized that the Bankruptcy Act itself contained no provisions authorizing the trustee to so act, the Court proceeded to analyze the issue in terms of "the nature of [reorganization] proceedings, the role of the trustee in reorganization, and the way in which standing to sue on behalf of debenture holders would affect or change that role." Id. at 422, 92 S.Ct. at 1682. After discussing these criteria, id. at 422-27, 92 S.Ct. at 1682-85, the Court determined that three reasons militated against allowing the trustee to have standing.
 
 
 20
 First, the Court found that nowhere in the statutory reorganization scheme was there any suggestion that the trustee should "assume the responsibility of suing third parties on behalf of debenture holders." Id. at 428, 92 S.Ct. at 1685. The Court noted that under 11 U.S.C. Sec. 567(3) of the Bankruptcy Act, the trustee had a duty to investigate potential causes of action of the estate, but that nothing in that section enabled the trustee to collect money not owed to the estate. Id. Further, the Court noted that 11 U.S.C. Sec. 110 of the Act (the relevant parts of which are now embodied in Sections 541 and 544 of the Code, 11 U.S.C. Secs. 541, 544) did not give the trustee this authority, id., but rather, "[the trustee's] task is simply to 'collect and reduce to money the property of the estates for which [he serves].' " Id. at 428-29, 92 S.Ct. at 1685 (quoting 11 U.S.C. Sec. 75(a)(1) of the Act, now Section 704(1) of the Code, 11 U.S.C. Sec. 704(1)). Second, the Court noted that the bankrupt corporation had no claim against the indenture trustee, and that at the most, the trustee's claims of misconduct involved a situation where the corporation and the indenture trustee were in pari delicto. Id. at 430, 92 S.Ct. at 1686. The Court thus expressed concern over whether the indenture trustee would be subrogated to the claims of the creditors. Id. Third, the Court was concerned that "a suit by [the trustee] on behalf of debenture holders may be inconsistent with any independent actions that they might bring themselves." Id. at 431-32, 92 S.Ct. at 1687. The Court noted that the trustee's action would not preempt suits by the individual creditors, and that such suits would be likely because it would be "extremely doubtful that the trustee and all debenture holders would agree on the amount of damages to seek, or even on the theory on which to sue." Id. at 432, 92 S.Ct. at 1687. Relatedly, the Court expressed concern over who would be bound by the settlement obtained by the trustee. Id.
 
 
 21
 Although the Court concluded that the above reasons required a finding against the trustee, the Court expressly invited Congress to decide differently:
 
 
 22
 Congress might well decide that reorganizations have not fared badly in the 34 years since [the reorganization chapter] was enacted and that the status quo is preferable to inviting new problems by making changes in the system. Or, Congress could determine that the trustee in a reorganization was so well situated for bringing suits against indenture trustees that he should be permitted to do so. In this event, Congress might also determine that the trustee's action was exclusive, or that it should be brought as a class action on behalf of debenture holders, or perhaps even that the debenture holders should have the option of suing on their own or having the trustee sue on their behalf. Any number of alternatives are available. Congress would also be able to answer questions regarding subrogation or timing of law suits before these questions arise in the context of litigation. Whatever the decision, it is one that only Congress can make.
 
 
 23
 Id. at 434-35, 92 S.Ct. at 1688. Congress, however, declined to accept the invitation.
 
 
 24
 In 1978, six years after Caplin was decided, Congress overhauled the bankruptcy laws when it enacted the Bankruptcy Code. As part of the revision, Congress consolidated former sections 70c and 70e of the Act (11 U.S.C. Secs. 110(c), (e) of former title 11) into Sections 544(a) and (b) of the Code, respectively, which apply to both reorganization and liquidation trustees. Although Section 544 clarified and expanded the trustee's role with respect to creditors, in no way was it changed to authorize the trustee to bring suits on behalf of the estate's creditors against third parties. In fact, the legislative history suggests just the opposite.
 
 
 25
 As originally proposed by the House, Section 544 was to contain a subsection (c), which was intended to overrule Caplin.[9] It is extremely noteworthy, however, that this provision was deleted before promulgation of the final version of Section 544.[10] Because subsection (c), as a part of Section 544, would have applied to both reorganization and liquidation trustees, and because Congress refused to enact subsection (c), we believe Congress' message is clear--no trustee, whether a reorganization trustee as in Caplin or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors. Further, although we believe congressional intent is clear and is thus determinative of the issue, because Caplin is still good law and is the only Supreme Court case to address the standing question, albeit in a reorganization setting, we feel obliged to address how the Court's concerns in that case apply to the case at bar.
 
 
 26
 First, just as there was nothing in the statutory reorganization scheme of the old Bankruptcy Act authorizing the trustee to collect money not owed to the estate, see Caplin, 406 U.S. at 428-29, 92 S.Ct. at 1685-86, similarly, there is nothing in Section 544 or the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owed to the estate. Rather, the Chapter 7 trustee's sole relevant duty regarding collection of money is under Section 704(1), and is geared to Section 541(a)(1), requiring the trustee to collect and reduce to money, among other things, the legal and equitable interests of the debtor. See 11 U.S.C. Secs. 704(1), 541(a)(1). As already discussed, see Part A, supra, and as recognized by the district court, the alter ego action fails to meet this ontological test. In re Ozark, 61 B.R. at 754-57; accord In re S I Acquisition, Inc., 58 B.R. 454, 461 (Bankr.W.D.Tex.1986); see Stodd v. Goldberger, 73 Cal.App.3d 827, 141 Cal.Rptr. 67, 72-73 (1977) (same result under Bankruptcy Act).
 
 
 27
 Moreover, contrary to the trustee's suggestion, we do not believe that Section 544 in its present form grants the trustee this right. First, as discussed above, in declining to explicitly authorize such standing in the wake of Caplin, it is difficult to ascertain how congressional intent could be stronger. Second, to argue that Section 544 in its present form grants the trustee this power is, we believe, to misconstrue the section's intended application. Although Sections 544(a) and (b) are admittedly broader than their predecessors, the substantive changes do not in any way suggest that the trustee was given the additional power to bring general causes of action on behalf of the estate's creditors.[11] In this vein, we note that Sections 544(a) and (b) are flavored with the notion of the trustee having the power to avoid "transfers" of the debtor, as were its predecessors, sections 70c and e of the Act. Further, it does not appear that Section 544 should be interpreted in a vacuum separate and apart from other relevant sections of the Code. As discussed by a noted author, Section 544 gives the trustee the power to avoid transfers of, or liens and encumbrances on, the debtor's property that he would be unable to challenge under other sections of the Code, such as 11 U.S.C. Secs. 547 (preferences), 548 (fraudulent transfers or obligations), or 549 (post-petition transfers). 4 Collier on Bankruptcy p 544.01, at 544-2 (15th ed. 1986). An alter ego action, however, does not entail invalidating of a transfer of interest, but instead imputes the obligations of one party to another regardless of any "transfers."
 
 
 28
 In summary, nowhere in Sections 544(a) or (b),[12] nor in other relevant provisions of the Code is there any suggestion that the trustee has been given the authority to collect money not owed to the estate.
 
 
 29
 Second, although there are no in pari delicto or subrogation concerns in this case, the third concern of Caplin--the trustee's suit would not preempt similar suits by other creditors of the corporation--is equally applicable to this case. If the trustee in the instant case was allowed to pursue and recover on the alter ego cause of action on behalf of Ozark's creditors, there obviously would be questions as to which creditors were bound by the settlement. See Caplin, 406 U.S. at 432 & n. 22, 92 S.Ct. at 1687 & n. 22.[13] This is because the trustee is not the real party in interest, and thus does not have the power to bind the creditors to any judgment reached in the litigation. See, e.g., Clarke v. Chase National Bank, 137 F.2d 797, 800 (2d Cir.1943); In re D.H. Overmyer Telecasting Co., Inc., 56 B.R. 657, 662-63 (Bankr.N.D.Ohio 1986).
 
 
 30
 In conclusion, based on congressional intent, as evidenced by the failure to expressly give the trustee standing to bring creditors' causes of action, and based on the concerns in Caplin, two of which directly apply to this case, we hold that the Chapter 7 trustee in this case does not have standing under Section 544 of the Code to bring an alter ego cause of action on behalf of the debtor corporation's creditors.
 
 
 31
 C. 11 U.S.C. Sec. 105 and Equitable Principles.
 
 
 32
 It is true that Section 105 allows a bankruptcy court to apply equitable principles that are necessary or appropriate in a particular case to carry out the provisions of the Code. See 11 U.S.C. Sec. 105. These powers, however, do not include the ability to award equitable relief where the party asserting the cause of action for such relief does not have standing under any other section of the Code. Cf. Johnson v. First National Bank of Montevideo, 719 F.2d 270, 273 (8th Cir.1983) (bankruptcy court's equitable powers may only be exercised in a manner consistent with the provisions of the Code), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Because no provision of the Code gives the trustee in this case standing to assert the alter ego claim, any equitable relief must be denied. Although this result may seem harsh in light of the bankruptcy court's clear findings that the corporate structure was abused, an opposite result would contradict the Code's directives.III. CONCLUSION.
 
 
 33
 Because the Code does not give the Chapter 7 trustee in this case standing to bring an alter ego action on behalf of the debtor corporation's creditors, the district court's order is affirmed.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas. The district court's opinion is reported as In re Ozark Restaurant Equipment Co., 61 B.R. 750 (W.D.Ark.1986)
 
 
 [2]
 These companies included three restaurants which were operated by Anderson Cajun's Wharf, Inc., of which Anderson was the chief executive officer; Gonzales & Gertrude's, another restaurant of which Anderson was the CEO; Port City Equipment Company; and Port City Seafood Company
 
 
 [3]
 At oral argument, the trustee, in response to a question from this court, stated that the creditors were asked to join in the action, but that none of them wished to do so
 
 
 [4]
 First, the bankruptcy court held that Port City Equipment Company was liable to Ozark under 11 U.S.C. Sec. 542 for the unpaid debt. In re Ozark, 41 B.R. at 479. Second, the court allowed the trustee to recover Ozark's loan payments to McIlroy Bank & Trust as preferential transfers. Id. at 479-80. In relation to this claim, the court also held that Anderson and Yancey, as guarantors of the loan, were liable to the bank for the amount recovered by the trustee and also for the balance due on the note. Id. at 480. Finally, as to the alter ego claim, the court found that Ozark was a mere instrumentality of the principals, and thus "pierced the corporate veil", holding the four individuals jointly and severally liable for $136,653.38 or the amount of unsecured debt listed in the bankruptcy petition. Id. at 480-81. The court pierced the veil based on its numerous findings of corporate abuse, including grossly inadequate capitalization; heightened fiduciary obligations of Yancey and Anderson as sole shareholders; Ozark's never having made a profit, and its net worth plummeting from negative $1,400 in 1980 to negative $146,000 in 1982; Anderson-related companies profiting from Ozark because of, among other things, low sale mark-ups and no interest on accounts payable; failure to keep adequate books and records; distribution of false financial statements; failure to pay taxes; and, the failure to hold regular meetings of the shareholders and directors. Id
 
 
 [5]
 The defendants initially appealed the bankruptcy court's judgment in April of 1984. The district court, however, dismissed the appeal as untimely. On appeal, this court vacated the district court's dismissal of the appeal, and instructed the district court to remand the case to the bankruptcy court for entry of the three judgments in accordance with bankruptcy rules without prejudice to the taking of a timely appeal to the district court. In re Ozark Restaurant Equipment Co., 761 F.2d 481, 484 (8th Cir.1985). Following entry of the judgments by the bankruptcy clerk, the defendants filed, on July 8, 1985, a timely notice of appeal to the district court
 
 
 [6]
 Although the district court did not rule on the bankruptcy court's judgment in the preference action, it appears to this court, after a careful review of the record in light of the applicable law, that the bankruptcy court's judgment in that action should also have been affirmed. In any event, neither this claim nor the unpaid debt claim has been appealed to this court
 
 
 [7]
 It is possible that some states permit the corporation or its stockholders to assert an alter ego cause of action to pierce the corporate veil, and thus, that a bankruptcy trustee would be able to enforce the claim on behalf of the debtor corporation under Sections 541 and 704. See In re Western World Funding, Inc., 52 B.R. 743, 783 (Bankr.D.Nev.1985) (although not sole basis of decision, court held that under Nevada alter ego doctrine, the corporation has an equitable interest in assets of the alter ego and thus, the action is one that is property of the estate under Section 541(a)(1)); see also In re Energy Cooperative, Inc., 58 B.R. 132, 134-35 (N.D.Ill.1985) (apparently interpreting alter ego action to pierce the corporate veil as a suit against the principals for mismanagement, misappropriation of assets, or breach of fiduciary duty). Arkansas, however, is not one of those states, as evidenced by cases such as Thomas, 543 S.W.2d 917, and Burns, 225 S.W.2d 1
 
 
 [8]
 Section 544 of the Code provides:
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser and [sic] has perfected such transfer exists.
 (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
 11 U.S.C.A. Sec. 544 (1979 & West Supp.1986).
 
 
 [9]
 Subsection (c) would have provided as follows:
 (c)(1) The trustee may enforce any cause of action that a creditor, a class of creditors, an equity security holder, or a class of equity security holders has against any person, if--
 (A) the trustee could not recover against such person on such cause of action other than under this subsection;
 (B) recovery by the trustee for the benefit of such creditor or equity security holder or the members of such class will reduce the claim or interest of such creditor or equity security holder or of such members, as the case may be, against or in the estate;
 (C) there is a reasonable likelihood that recovery against such person will not create an allowable claim in favor of such person against the estate; and
 (D) enforcement of such cause of action is in the best interest of the estate.
 (2) If the trustee brings an action on such cause of action--
 (A) the court, after notice and a hearing, may stay the commencement or continuation of any other action on such cause of action; and
 (B) the clerk shall give notice to all creditors or equity security holders that could have brought an action on such cause of action if the trustee had not done so.
 (3) A judgment in any such action brought by the trustee binds all creditors or equity security holders that could have brought an action on such cause of action. Any recovery by the trustee, less any expense incurred by the trustee in effecting such recovery, shall be for the benefit only of such creditors or equity security holders.
 H.R. 8200, 95th Cong., 1st Sess. 416-17 (1977).
 A legislative commission initially recommended that the Caplin problem could be "partially solved by conditioning the right of the trustee to enforce a claim on such actions being 'in the best interest of the estate.' " Report of the Committee on the Bankruptcy Laws of the United States, H.R. Doc. 93-137, 93d Cong., 1st Sess. Part I at 201 (1973) (footnoting a proposed section of the bill). The House apparently agreed that Caplin should be overruled and included subsection (c) in its original proposed version of Section 544. In explaining the import of subsection (c), the House Report stated:
 Subsection (c) is new. It overrules Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 [92 S.Ct. 1678, 32 L.Ed.2d 195] (1972), which precluded a [reorganization] trustee from enforcing a claim on behalf of debenture holders against an indenture trustee. The trustee is permitted to act as a class representative under this provision if the trustee has no other basis on which to recover on the claim involved; recovery will reduce the claim of a class of creditors or equity security holders and will not give rise to a corresponding but offsetting right of subrogation; and enforcement of the cause of action is in the best interest of the estate. Recovery in such an action is for the benefit of the class of creditors or equity security holders on whose rights the trustee has based the action. A judgment in the action binds all creditors or equity security holders that could have brought the action, and the court may stay the commencement or continuation of any other action on the same cause of action. All creditors that could have brought the action are given notice of the trustee's suit, and nothing precludes such creditors from retaining their own attorneys and joining the action in their own behalf.
 H.R.Rep. 95-595, 95th Cong., 1st Sess. 370-71 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6326, 6327.
 
 
 [10]
 After the Senate adopted an amendment in the nature of a substitute to the bill originally proposed by the House, the two houses met and agreed upon a compromise bill. In a joint explanatory statement regarding the compromised provisions, the only reference to the proposed subsection (c) was as follows: "The House amendment deletes section 544(c) of the House bill." 124 Cong.Rec. Hll,097 (Sept. 28, 1978)
 
 
 [11]
 As summarized by one author:
 The concept of Sec. 70c of the Act is largely followed in Sec. 544(a) of the Code with, however, some drafting improvements and at least one substantive change. Section 544(a) gives the trustee the status of a creditor that extends credit to the debtor at the time of commencement of the case and obtains a judicial lien at such time or has an execution returned unsatisfied. [Footnote citing Sections 544(a)(1) and (2) omitted.] With respect to real property the trustee is also given the rights of a bona fide purchaser. [Footnote citing Section 544(a)(3) omitted.] In each instance the rights afforded the trustee exist without regard to any knowledge of the trustee or of any creditor.
 P. Murphy, Creditors' Rights in Bankruptcy Sec. 12.04, at 12-5 (1980).
 Further:
 The successor to Sec. 70e of the Act is Sec. 544(b) of the Code [footnote quoting Section 544(b) omitted] which contains few, if any, substantive changes from Sec. 70e. The requirement that the actual creditor have a provable claim has been deleted with the deletion of the whole concept of provability found in Sec. 63 of the Act from the Code. However, the claim must be one that is allowable under Sec. 502 or not allowable only under Sec. 502(e). The latter section deals with claims of sureties which are disallowed only until the principal creditor has been paid in full. [Footnote omitted.]
 Any possible argument that the trustee might assert the rights of an actual secured creditor has been ended by the wording of Sec. 544(b) which provides that the claim must be an unsecured one.
 Id. Sec. 13.05, at 13-5.
 
 
 [12]
 In arguing that Section 544(a)(1), which gives the trustee the status of a hypothetical lien creditor, authorizes the trustee to bring an alter ego cause of action, the trustee relies heavily on In re Western World Funding, Inc., 52 B.R. 743 (Bankr.D.Nev.1985). In Western World, the court did hold that the trustee had standing under Nevada law to bring an alter ego action; however, its holding was not based exclusively on Section 544(a)(1). See id. at 776-84. Moreover, on closer examination, it appears that the court's holding was actually based on Section 544(a)(2), see id. at 782, and Sections 541 and 704. See id. at 783. As already discussed, however, the alter ego action under Arkansas law cannot be brought by the trustee under Sections 541 and 704. See Part A of text, supra. Further, we question the validity of Western World's holding based on Section 544(a)(2). Section 544(a)(2) was derived from section 70c of the Bankruptcy Act, and like section 70c, was intended to merely protect the trustee against "quirks of local procedural law," where certain remedial rights flowed to a creditor who had an execution returned unsatisfied. 4B Collier on Bankruptcy p 70.64, at 730-31 (14th ed. 1978). Thus, whenever a procedure was necessary under local law, such as exhausting the legal remedy of obtaining a writ before asserting equitable relief, the trustee would be deemed to have reached that stage in the proceedings. Id. at 733. As further noted by Collier, however, this section "lacks real importance because of the general abolition of the distinctions between law and equity." Id. The Western World court, although noting this background in a footnote related to a different issue in the case, Western World, 52 B.R. at 775-76 n. 12, cited no Nebraska law requiring this type of procedure before a creditor can bring an alter ego action
 Additionally, the trustee's argument based on Section 544(b) is weak at most. As already noted, 544(b) is derived from section 70e of the Act and contains little, if any, significant modification. See note 11, supra. Section 544(b) allows the trustee to avoid "transfers" of the debtor or "obligations" incurred by the debtor that are voidable under applicable (state) law. 11 U.S.C. Sec. 544(b). No other authority is granted to the trustee in this subsection. Thus, as noted by one author, Section 544(b) will generally come into play under three scenarios: (1) where a trustee cannot avoid a fraudulent conveyance under 11 U.S.C. Sec. 548 because of the permitted period of recovery, and thus has to resort to recovery under the applicable state fraudulent conveyance act; (2) where a trustee wants to recover under the applicable state bulk sales statute; or (3) where there has been an illegal payment of corporate dividends or purchases of stock and the local law allows an unsecured creditor to bring the action. P. Murphy, Creditors' Rights in Bankruptcy Sec. 13.05, at 13-6 (1980). In fact, we have found no authority suggesting that a creditor's alter ego claim may be asserted under this subsection.
 
 
 [13]
 We note that if Congress had enacted the proposed version of subsection (c) of Section 544, this problem would have been solved. See note 9 supra, especially proposed subsection (c)(3)