## In re CLEAN CAR SYSTEMS, INC., Debtor.

### J. Kevin CHECKETT, Trustee, Plaintiff,

v.

### FIRST STATE BANK OF JOPLIN, Defendant.

Bankruptcy No. 90–60355.

Adv. No. 93–3013.

United States Bankruptcy Court, W.D. Missouri.

Jan. 21, 1994.

Charles W. Pauly, Checkett & Pauly, Carthage, MO, for plaintiff.

Robert Bradley, Blanchard, Van Fleet & Martin, Joplin, MO, for defendant.

*MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Defendant, First State Bank of Joplin ("First State"), has moved for Summary Judgment as to all Counts of plaintiff's Complaint. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I grant defendant's motion.

*FACTUAL BACKGROUND*

Clean Cars Systems, Inc. ("Clean Car") is a Missouri corporation which was established by Henry Doss ("Doss") on April 12, 1988, to build and operate an automated car wash facility. Pl. Exh. # 4. At that time Mr. Doss was the sole or majority shareholder of a number of entities, of which at least four had a banking relationship with First State. First Amended Complaint, ¶¶ 5 and 6. D & S Leasing, Inc. ("D & S") and Clean Car are the only two which concern us here. Doss allegedly also had a personal relationship with Lynn Hartley, who was the president of First State at the time in question. *Id.*, ¶ 35. At the time the debtor was established, First State held two promissory notes from D & S with an outstanding cumulative balance due of $377,003.00, secured by two deeds of trust on property owned by D & S. *Id.*, ¶ 15. One deed of trust covered two parcels of land ("Parcel I and Parcel II") and the second deed of trust covered only Parcel I. *Id.*, ¶ 14. Parcel I was a seven acre tract of undeveloped land on North Rangeline Road in Joplin, Missouri. Suggestions in Opposition to Defendant's Amended Motion for Summary Judgment at page 8.

On August 19, 1988, Clean Car borrowed $448,000 from Great Southern Savings and Loan Association ("Great Southern"). *See generally id.* at pages 7–9. This is the transaction which Clean Car's trustee contends caused injury to such debtor. Of the Great Southern loan proceeds, $350,000.00 was paid to First State to secure the release of the deeds of trust on Parcels I and II. *Id.* The Bank then released its deeds of trust on Parcel I and Parcel II. *Id.* At the same time, D & S conveyed two of the seven acres in Parcel I to Clean Car. *Id.* Great Southern secured its note with a deed of trust on this two acre tract. *Id.* The remainder of Parcel I, and Parcel II, were then held by D & S free and clear of any lien. *Id.* Of the $350,000.00 paid to it, First State applied $250,000.00 to the two D & S notes with a balance of $377,003.00, and in exchange released both deeds of trust. *Id.* The remaining $100,000.00 paid to First State was deposited in D & S's bank account, which was overdrawn as of August 19, 1988. *Id.*

Other than the $350,000.00 paid to First State, there was an additional $98,000.00 lent to Clean Car, which used $90,000.00 for site preparation and $8,000.00 for loan origination fees. Defendant's Suggestions in Support of Its Amended Motion for Summary Judgment at page 7.

The key factual allegation underlying this lawsuit is that First State caused the debtor to accept a $350,000.00 lien against the undeveloped real estate, transferred to Clean Car by D & S, when such real estate was worth no more than $250,000.00, and that Clean Car and its creditors were thereby harmed. First Amended Complaint ¶¶ 16–19.

Subsequent to the loan in question here, Great Southern made additional loans to the debtor for the purpose of constructing the car wash on the undeveloped land. On October 14, 1988, Great Southern loaned Clean Car $1,071,000.00 for that purpose. And, on November 23, 1988, Great Southern loaned an additional $105,000.00 to Clean Car. Plaintiff's Responses to Defendant's Request for Admissions, ¶¶ 16, 17, 34 and 35. The car wash venture did not succeed, and on April 12, 1990, Clean Car filed its Chapter 11 petition. (Case No. 90–60355). The case was converted to Chapter 7 on October 25, 1991. On November 20, 1991, Great Southern, which held a claim per a confirmed Plan of Reorganization of $1,336,479.73, obtained relief from the automatic stay to foreclose on the car wash facility. Great Southern has not filed any deficiency claim in the Chapter 7 case. Based on the claims on file, Clean Car has unsecured debt of $12,962.29 due the

Missouri Department of Revenue, and $8,274.37 due unsecured trade creditors.[1]

The trustee's amended complaint is in three counts against First State, claiming such bank: (1) breached a duty of good faith to debtor's creditors; (2) breached a fiduciary duty to debtor's creditors; and (3) received a fraudulent conveyance because it received funds in excess of the value of the property transferred to debtor by D & S. As a basis for the trustee's cause of action, he alleges the following collateral facts:

1. The relationship between Doss, some of Doss's entities and First State was unlike a conventional bank/customer relationship. For example, at times the cumulative total of overdrafts incurred by Doss entities in their various accounts at First State exceeded $415,592.00. On September 26, 1989, which is more than a year after the transaction in question here, the president of First State, Lynn Hartley, issued an irrevocable letter of credit in the amount of $200,000.00 in favor of Great Southern at the request and for the account of Clean Car. Such letter of credit was not recorded on the books and records of First State. And for a period of time, First State honored checks from Clean Car which contained only one signature, rather than the two signatures required by the corporate documents. First Amended Complaint, ¶¶ 7, 7(A), and 7(D); Pl. Exh. # 3.

2. First State acquired Parcel I and Parcel II in lieu of foreclosure and sold both parcels to D & S on January 27, 1987, for $150,000.00. First Amended Complaint, ¶ 7(E); Pl. Exh. # 6. D & S owned another tract of land on South Rangeline Road which was also subject to the Bank's lien. First Amended Complaint ¶ 9. The South Rangeline property was the original site selected for the car wash. First State informed Great Southern that it would need $450,000.00 to release the deed of trust on the South Rangeline property. Id., ¶ 11. Great Southern offered $350,000.00 and First State accepted, however, a title defect in such property caused Doss to abandon his plan to build the car wash in that location. Id., ¶¶ 11 and 12. Instead, the decision was made to build the car wash on part of Parcel I on North Rangeline Road. Great Southern agreed to the previously established price of $350,000.00 and First State agreed to release its deeds of trust. Id. The trustee maintains that the North Rangeline property is less valuable than the South Rangeline property, therefore, the Bank had determined a sum certain it wished to receive from Great Southern unrelated to the value of the land involved. As a result of this allegedly inflated price, debtor was undercapitalized, thus its ability to succeed as a business was undermined. Trustee maintains that the Bank had a duty to the creditors of Clean Car at the time of its formation, and breached that duty by requiring Clean Car to purchase property for an inflated price from D & S before the Bank would release its deeds of trust to such property. Id., ¶ 25.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. A motion for summary judgment must be construed in the light most favorable to the non-moving party. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Lane v. Patterson,* 899 F.2d 737, 739 (8th Cir.1990); *Neil v. Neil,* 131 B.R. 142, 143 (W.D.Mo.1991). Therefore, I look to the pleadings, exhibits, and depositions on file to determine if plaintiff can prove any set of facts at trial which would entitle him to a judgment in his favor. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

■ Preliminarily, I should note a number of compelling and undisputed facts about this case. First, I note that First State, which was owed $377,003.00 by D & S at the time of the questioned transaction, could not have been required to release any portion of its

---

1. The first meeting of Creditors was scheduled for December 18, 1991. The last date for filing proofs of claim in the Chapter 7 was March 18, 1992. Fed.R.Bankr.P. 3002(c).

collateral until the debt secured by that collateral was paid in full. Mo.Stat.Ann. § 443.-060(1) (Supp.1993); *Tipton v. Holt,* 610 S.W.2d 659, 662 (Mo.Ct.App.1981). Yet the crux of this suit is that First State refused to release its lien for less than $350,000.00, which the trustee contends was in excess of the value of the two acres. The fact that a bank refuses to release a lien on real property for less than full payment can hardly be said to be a breach of any duty to the entity which is purchasing that real property from the customer of the bank. Second, while the trustee contends that the two-acre tract was worth substantially less than the amount demanded by First State, there is no dispute that Great Southern chose to lend first $448,-000.00, and than an additional $1,176,000.00 secured by that real estate and the improvements built thereon. Great Southern is not a party to this suit, and there is no allegation that Great Southern in any way participated in the alleged misdeeds of First State. Third, I note that the immediate beneficiary of the transaction was D & S and its owner, Henry Doss. Prior to the transaction, First State held a lien not just on the two-acre tract, but also on the remaining five acres of Parcel 1, as well as Parcel 2. When the dust settled, a new bank had a lien on the two acres, which had been transferred to Clean Car, and the balance of Parcels 1 and 2 still owned by D & S were free of the First State debt. Yet D & S is not a defendant here even though it is the only possible beneficiary of any alleged fraudulent conveyance from Clean Car. And finally, though not necessary to my decision, I note that if the trustee were to prevail the prime beneficiary would be Henry Doss, the owner of both debtor and D & S. As shown, the debtor has debts of $21,236.66, of which $12,962.29 is owed to the Department of Revenue. Once those debts are paid, all other monies recovered go to the owner of the debtor, Mr. Doss, whose other company, D & S, benefitted from the transaction in question. Quite possibly Mr. Doss believes he was treated unfairly in his relationship with First State. If so, that is an issue between him and First State, and not for this Court.

Turning then to Counts I and II of the Complaint, both seek damages for breaches of duties allegedly owed to creditors of Clean Car, first a duty of good faith and second a fiduciary duty. Yet it is well-established that a trustee lacks standing to bring a cause of action on behalf of the creditors of the debtor. *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222 (8th Cir.1987). In that case the trustee brought a cause of action against debtor's alter ego on behalf of the unsecured creditors. The court held that the trustee could only bring a cause of action on behalf of the estate that the debtor itself could have brought before the filing of the bankruptcy petition. *Id.* at 1226. The court first found that the trustee is required "to collect and reduce to money property of the estate for which the trustee serves." *Id.* at 1224 *citing* 11 U.S.C. § 704(1). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id. citing* 11 U.S.C. § 541(a)(1). In order for the trustee in this case to bring an action on behalf of the creditors for breach of the duty of good faith and breach of the bank's fiduciary duty, the trustee must prove that the debtor itself could have brought this action prior to the filing of the case.

In *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2nd Cir.1991), the Court held that a bankruptcy trustee has no standing to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation. *Id.* at 119. *Shearson Lehman* is more nearly on point to the trustee's alleged misconduct in this case. The trustee brought a cause of action on behalf of the creditors of the bankrupt HMK Management Corporation claiming Shearson Lehman aided, abetted, and unduly influenced the debtor's principal in making bad trades and dissipating corporate funds. *Id.* The court denied this cause of action holding first that to the extent the claim was for money damages, it belonged to the clients of the debtor and not to the trustee. Second, to the extent the claim was for money damages to the debtor itself, the debtor's sole shareholder and decision maker knew of the bad investments and actively favored them. *Id.* at 120. Therefore, the

court held that "a claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Id.* Since the trustee here admits to the cooperation of Doss in this entire transaction, even were I to find that the Bank defrauded Clean Car's creditors or breached a duty to Clean Car's creditors, that cause of action belongs to the creditors and the trustee does not have standing to pursue it. Indeed, the creditors of this estate would not be bound by any recovery obtained on their behalf by the trustee. For all of these reasons I find that the trustee does not have standing to pursue Counts I and II on behalf of unsecured creditors. Therefore, the Motion for Summary Judgment must be granted as to those Counts.

Count III of the trustee's First Amended Complaint alleges that the transfer of the two acres of Parcel I to Clean Car was a fraudulent conveyance because the property was worth substantially less than $350,000.00. Alternatively, the trustee claims the transfer of property was made with the intent to hinder, delay and defraud creditors of Clean Car. Count III does not specify whether it is brought under Section 548 of the Bankruptcy Code or state law. Section 548(a) of the Code [2] allows the trustee to avoid any transfers made and obligations incurred by a debtor, but only if made or incurred on or within one year before the filing of the bankruptcy petition. 11 U.S.C. § 548(a). Here the transaction in question took place on August 19, 1988, but the bankruptcy petition was not filed until April 12, 1990. Therefore, Section 548 is not applicable.

**2.** Section 548(a) of the Code provides as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

In addition to the Code's fraudulent conveyance statute, a bankruptcy trustee also has authority to avoid transfers which could be avoidable by creditors under applicable state law. Thus, unlike Counts I and II, the allegations of Count III fit squarely within the authority granted trustees by the Code. Section 544(b) of the Code provides that:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title....

11 U.S.C. § 544(b). The applicable law in this case is the Missouri Fraudulent Conveyance statute, which at the time of the transaction read as follows:

Every conveyance or assignment ... of any estate or interest in lands ... made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands ... shall be from henceforth deemed and taken, as against said creditors and purchases, prior and subsequent, to be clearly and utterly void.

Mo.Stat.Ann. § 428.020 (1992).[3] While the trustee has standing to bring a cause of action under this provision of the Code, he must prove that a fraudulent conveyance took place between the debtor and First State. The undisputed facts together with the allegations in the First Amended Complaint, do not create a cause of action be-

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was bout to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a).

**3.** This statute was repealed in 1992, and replaced by Mo.Stat.Ann. § 428.024 (Supp.1993).

tween these parties for fraudulent conveyance. The sum and substance of the transaction is that D & S transferred the real estate to Clean Car, which borrowed $448,000.00 from Great Southern and paid $350,000.00 out of such loan proceeds to First State in exchange for a release of its lien. Clean Car, which at the time was not even a customer of First State, had no right to demand that First State release its lien for anything less than the $377,003.00 owed it. The fact that First State demanded $350,000.00, rather than the lesser amount the trustee contends the property was worth, does not create a fraudulent conveyance in favor of First State. Therefore, the Motion for Summary Judgment must be sustained as to Count III as well.

An Order in accordance with this Memorandum Opinion will be entered this date.