In re OZARK RESTAURANT EQUIPMENT COMPANY, INC., Debtor.

Jill R. JACOWAY, Trustee, Plaintiff,

v.

Bruce ANDERSON, Elmer Dale Yancey, Kenneth Eads, Robert Whiteley and Anderson Cajun's Wharf, Defendants.

Jill R. JACOWAY, Trustee, Plaintiff,

v.

ANDERSON CAJUN'S WHARF, Defendant.

Jill R. JACOWAY, Trustee, Plaintiff,

v.

Hayden McILROY of McIlroy Bank & Trust, Ed Yancey, Bruce Anderson and Kenneth Eads, Defendants.

Civ. No. 87–5035.

United States District Court, W.D. Arkansas, Fayetteville Division.

Aug. 25, 1987.

Jill Jacoway, Fayetteville, Ark., for plaintiff.

Raymond C. Smith, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an appeal from the decision on remand of the United States Bankruptcy Court for the Western District of Arkansas in a proceeding arising out of the bankruptcy of Ozark Restaurant Equipment Company, Inc. Jurisdiction initially rested in bankruptcy court pursuant to 28 U.S.C. § 1471 and 1481, 11 U.S.C. § 105, and General Order No. 24 of the United States District Courts for the Eastern and Western Districts of Arkansas.

This case was originally three adversary proceedings which were consolidated for trial. By order and decision dated May 22, 1986, this court reversed Judge Baker's decision in adversary proceeding 82–882 which had allowed the trustee to assert an alter ego action against the *debtor* corporation thereby piercing the corporate veil and holding the defendants individually liable for the debts of the debtor corporation. (Judge Baker's decision is reported at 41 B.R. 476.) The matter was remanded for a determination of whether "the 'low markups' accorded Anderson and his enterprises were fraudulent transfers as they are defined in the Code, or preferences." *In re Ozark Restaurant Equipment Co.*, 61 B.R. 750, 757 (W.D.Ark.1986).

Judge Stewart on remand determined that the low markups did constitute fraudulent transfers and entered judgment in the form of additional markups on the transfers. *Matter of Ozark Restaurant Equipment Co.*, 74 B.R. 139 (Bankr.W.D.Ark. 1987). It is from this decision that the defendants, Bruce Anderson, Elmer Dale Yancey, and Anderson Cajun's Wharf, Inc., appeal.

This case has been the subject of litigation for a number of years and the facts discussed in several reported decisions. *See In re Ozark Restaurant Equipment Co.,* 41 B.R. 476 (Bankr.W.D.Ark.1984) (Judge Baker's decision); *In re Ozark Restaurant Equipment Co.,* 61 B.R. 750 (W.D.Ark.1986) (This court's decision); *In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222 (8th Cir.1987). The court will relate a summary of only those facts necessary for a determination of the issues presented on appeal.

Bruce Anderson and Elmer Dale Yancey purchased Ozark Restaurant Equipment Co. (hereinafter referred to as Ozark or the debtor) in 1980. Both became 50% shareholders of Ozark and held positions as directors. Kenneth Eads acted as director and president of Ozark and was largely responsible for the daily operations of the debtor corporation.

All three men were also stockholders in Anderson Cajun's Wharf. Bruce Anderson is the majority stockholder and acted as chief operating officer. Mr. Yancey is a stockholder and director of Anderson Cajun's Wharf. Kenneth Eads was a stockholder. Port City Equipment Co. is a subsidiary of Anderson Cajun's Wharf and was in the business of restaurant equipment sales.

"Anderson-related entities" include Anderson Cajun's Wharf in Little Rock, Cajun's Wharf in Nashville, Cajun's Wharf in Knoxville, Gonzales & Gertrude's, Port City Equipment Co., and Port City Seafood Co. In 1980 Bruce Anderson owned 50% or more of the stock in each of these entities. (Judge Baker's findings of fact 41 B.R. at 477.) The debtor never made a profit which was partly due to the fact that extremely low (an average of 7%) markups were collected from the Anderson-related enterprises, while expert testimony, deemed credible by the trial judge, established that in order to make a profit the business needed to average a 30% markup. Further facts will be related when necessary to a clear understanding of the issues presented.

This court remanded the case for a determination whether these low markups constituted fraudulent transfers. In its memorandum opinion, the bankruptcy court held that the sales to Anderson-related entities during the period dating from August, 1981, to July, 1982, conferred value upon the defendants, which can be recovered by the trustee as fraudulent transfers within the meaning of § 548(a)(2). 11 U.S.C. § 548(a)(2). The court concluded that this finding warranted the recovery of the excess 23% gained by the transferees at bar. The 23% represents the difference between the average 30% markup experts stated was necessary and the 7% average markup charged to Anderson-related entities. Judgment was accordingly entered.

In their appeal from these judgments, appellants argue that: (1) the trustee's assertion of a cause of action under § 548 was barred by the statute of limitations; (2) the determination of whether reasonably equivalent value was received is a question of law or a mixed question of law and fact which entitles the appellants to a de novo review; (3) the bankruptcy court erred in ruling that the debtor received less than reasonably equivalent value; (4) the trustee cannot use sales made by the debtor which are outside the one year limitation period to establish a percentage of markup on goods sold by the debtor during the year preceding the filing of the petition; (5) the bankruptcy court erred in holding that § 542(b) can be used as an alternative ground for recovery; (6) the bankruptcy court erred in allowing recovery on an accounts receivable ledger that was never shown to exist; (7) the bankruptcy court erred in entering judgment against the appellants personally when the questioned transfers were made between two corporations; and (8) the appellants cannot be held liable for payments made by the debtor to a creditor when the creditor would have been entitled to an exemption from the trustee's avoidance powers under § 547(c)(2). (All section references are to the Bankruptcy Code 11 U.S.C. § 101 et seq.)

## STATUTE OF LIMITATIONS

■ Appellants contend the trustee's assertion that the transfers, made at the low markups, were fraudulent transfers within the meaning of § 548 was barred by the two-year statute of limitations in § 546(a). Specifically, they argue that the trustee was attempting to assert a new cause of action more than three years after the trustee's original appointment.

Section 546(a) provides that "an action or proceeding under Section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; and (2) the time the case is closed or dismissed." In the case at bar Mr. James Mixon was appointed trustee on August 24, 1982, and the successor trustee, Ms. Jill Jacoway, was appointed on February 29, 1984. Appellants contend that the § 548 theory of liability was not tried or argued until after this court remanded the case to bankruptcy court on May 22, 1986. In support of their argument appellants cite *In the matter of Burstein-Applebee Co.*, 30 B.R. 779 (Bankr.W.D.Mo.1983). In which the court held a cause of action barred when the complaint was filed more than two years after the trustee was appointed. However, in the court's view, this statute of limitations does not prevent the trustee's assertion of the § 548 cause of action in this case.

The appellants acknowledge the great leeway in amending complaints that is provided by Fed.R.Civ.P. 15 but contend that this issue was not tried by the consent of the parties nor did the trustee amend the original complaint. Specifically, Fed.R. Civ.P. 15 provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend

does not affect the result of the trial of these issues.

Fed.R.Civ.P. 15(b). The Federal Rules of Civil Procedure are made applicable to bankruptcy proceedings when not inconsistent with the Bankruptcy Act or any General Order in Bankruptcy. Bankruptcy Rule 7015; *See also* Wright & Miller *Federal Practice and Procedure* § 1472.

Subsection (b) encompasses two procedures used in amending the pleadings to conform to the evidence. The first provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. "The second procedure described in Rule 15(b) authorizes the court to permit the pleadings to be amended when evidence is objected to at trial as not being within the framework of the pleadings." Wright & Miller, *Federal Practice and Procedure* § 1491.

"Rule 15(b) of the Federal Rules of Civil Procedure permits any theory of liability to be considered that is tried and argued by the parties, regardless of whether or not it is included in the pleadings." *Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1197 n. 3 (8th Cir.1982). This is true regardless of whether or not the specific theory on which judgment was granted was the focus of the lawsuit. *Ehrichs v. Kearney*, 730 F.2d 1170, 1174 (8th Cir. 1984) *cert. denied*, 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 261 (1984).

"Consent may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection." *St. Joe Minerals Corp. v. Occupational Safety & Health Review Com.*, 647 F.2d 840, 844 (8th Cir.1981). Whether the parties have impliedly consented to litigate an issue must be determined on a case by case basis with due consideration given to whether the parties had a fair opportunity to address the issue. *St. Joe Minerals Corp., supra; See also* Wright & Miller, *Federal Practice and Procedure* § 1493.

In the instant case, much of the testimony in the November 28, 1983, hearing centered on the questioned transfers and the

"markups" charged to the Anderson entities. Relevant exhibits and testimony were presented and the defendants were given the opportunity to cross-examine and produce evidence. After remand Judge Stewart held an additional evidentiary hearing on November 25, 1986, concerning the questioned transfers.

This court's review of the record leads it to the conclusion that at trial on November 28, 1983, the scope of the hearing was broad enough to encompass an additional theory of liability not specifically pleaded in the complaint. In addition, the transcript of the trial reveals that Mr. Martin did move to amend the pleadings to conform to the proof and that there was no objection made to such amendment. (Tr. Vol. II at 198–199).

Appellants point to the following language in the transcript from the hearing on November 25, 1986:

The Court: All I want to know is if the Trustee is seeking any relief in 882 against Anderson Cajun's Wharf.

Ms. Jacoway: Yes, sir.

The Court: She is.

Mr. Smith: Since the appeal that the Trustee made in that, your Honor, was only based on the alter ego theory against the defendants shown there other than Anderson Cajun's Wharf then I don't know what theory we're going under on . . . . .

The Court: It has to be § 547, § 548. The District Court on remand suggested a new theory of recovery in each one of the cases under § 547 or § 548, and I interpret the order of remand as enabling the Trustee to amend her complaint wherever it's possible to do so to seek recovery under those two sections because it was stated clearly that she has a right to seek recovery in the exercise of her avoiding powers, but not on the other theory, according to the District Court.

Mr. Smith: Well, the avoidance theory, of course, I would argue Your Honor, was not raised in 82–822.

The Court: The District Court has raised it. Particularly if she is relying on facts which have already been tried, they have been tried by implication.

Tr. Vol. III at 7–8.

Appellants however, omit the remainder of the colloquy which lends insight into their present argument.

Mr. Smith: Well, there was no amendment to the proof.

Ms. Jacoway: But there was. At the end of the case Mr. F.H. Martin, who tried the case for the Trustee, asked that the pleadings conform to the facts which have been presented and that was [sic] admitted without objection.

The Court: Under Rule 15(c) of the Federal Rules of Civil Procedure, which I believe is incorporated into the Bankruptcy Rules under 7015, the Court at the conclusion of the trial may amend the pleadings to accord with the evidence.

Mr. Smith: I didn't read that in the record. I could have overlooked it.

The Court: Well, the court may still do so. Because of the remand and the suggestion of a new theory of recovery, this court is continuing the trial. It's as if an adjourned hearing is being held.

Mr. Smith: All right, sir.

Tr. Vol. III at 7–8.

Therefore, not only does it appear that the issue was tried by the "implied consent of the parties," the record also reveals that an amendment to conform to the proof was made by Mr. Martin to bring the pleadings in line with the actual issues upon which the case was tried. For these reasons, the appellants' argument that the trustee's assertion of the § 548 cause of action was barred by the statute of limitations must fail.

**STANDARD OF REVIEW**

 Appellants argue that this court should conduct a de novo review. The clearly erroneous standard of review applies to this court's consideration of the bankruptcy court's factual determinations but does not apply to appellate review of questions of law or to mixed questions of law and fact. Bankruptcy Rule 8013. *See also In re Reid*, 757 F.2d 230 (10th Cir. 1985). (Bankruptcy Amendments of 1984

do not affect standard of review in bankruptcy matters).

Appellants premise their argument for a de novo review on the assertion that the question of whether reasonably equivalent value has been received is a question of law or a mixed question of law and fact. In support of this argument appellants point to *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir.1980), in which the Fifth Circuit concluded that whether reasonably equivalent value had been received was a question of law. The court stated, however, that it would have reached the same result under the clearly erroneous standard. *Id.* at 204.

"Whether the transfer is for 'reasonably equivalent value' in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." 4 Collier on Bankruptcy Par. 548.-09 p. 548–100 (15th Ed.1986). "Fairness of consideration is generally a question of fact." *Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir.1979) (citations omitted). The Eighth Circuit in *In re Hulm*, 738 F.2d 323 (8th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398 (1984), rejected the idea that the price received at a foreclosure sale, absent improprieties, could constitute reasonably equivalent value as a matter of law.

In fact the court stated that "in our view, the question of whether the sale price provided a reasonably equivalent value cannot be answered without an evidentiary hearing." *In re Hulm*, 738 F.2d at 327. The court then proceeded to remand to the bankruptcy court for an evidentiary hearing on whether the sale price constituted reasonably equivalent value. While not on all fours with the issue at hand, this does suggest the Court of Appeals for the Eighth Circuit was treating this as a factual question. However, appellants steadfastly maintain that this determination is one of law or a mixed question of law and fact.

The context in which this decision must be made mitigates against such a finding. Clearly whether "reasonably equivalent value" has been received by the debtor is a question that is unique to each case and must of necessity be made on a case by case basis. The trial judge must make this determination based on a myriad of factual details, including consideration of the factors suggested by the appellants—purchase price, freight, sales tax, rebates, markups, etc. Therefore, the court will apply the clearly erroneous standard of review to the determination of whether reasonably equivalent value was received. This court recognizes that great weight should be accorded to the findings of the bankruptcy judge as he had occasion to observe the demeanor of the witnesses and to assess their credibility.

The appellants next maintain that Judge Stewart did not make an independent examination of whether the debtor actually received reasonably equivalent value for the questioned transfers but merely adopted the factual findings of Judge Baker. With respect to this contention, the court notes that at the evidentiary hearing held by Judge Stewart on November 25, 1986, the trustee relied primarily upon the evidence previously presented. In addition, the previous findings of fact of both Judge Baker and this court were incorporated by reference. 74 B.R. at 141 n. 10. However, the defendants had the opportunity to offer and did offer evidence that 30% was not the "normal" markup. *Id.* at 142. Judge Stewart stated that "in assessing the weight to be accorded this testimony, [this court] does not believe that it effectively contradicts the expert testimony presented in the hearing before Judge Baker to the effect that a markup of 30% is necessary to success in the trade." *Id.* at 143. This court cannot say that such a determination, based primarily on the credibility of the witnesses, was clearly erroneous. *See* 74 B.R. at 143.

## REASONABLY EQUIVALENT VALUE

§ 548 reads in relevant part:

§ 548 Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within

one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548.

The bankruptcy court's memorandum opinion, 74 B.R. 139, awarding an additional 23% markup on the amount of sales to Anderson-related entities necessarily was based on the following findings: the transfers occurred within one year before the debtor filed its bankruptcy petition; the sale of goods at under a 30% markup constituted less than reasonably equivalent value; and the debtor was insolvent throughout the time period involved. 74 B.R. at 143–44.

Appellant's principal contention is that the debtor received "reasonably equivalent value" when the debtor received a 10% markup on the sale of the goods in question and actually made a profit. This assertion, however, is not borne out by the facts.

The Bankruptcy Code does not define "reasonably equivalent value." Indeed this term has been problematic for the courts. 4 Collier on Bankrputcy Par. 548.09 (15th Ed.1986). In the context of foreclosure sales, the Eighth Circuit has rejected a strict percentage test. *In re Hulm,* 738 F.2d 323 (8th Cir.1984). There do not appear to be specific guidelines concerning what constitutes "reasonably equivalent value," nor does it appear possible to establish specific guidelines.

The courts have tended to phrase the inquiry as a determination of whether fair consideration or a fair equivalent has been given. This, however, is a matter of semantics and does not aid the court in making the ultimate determination. Generally, whether reasonably equivalent value has been given, is to be determined upon a review of all the facts and circumstances of the case. The nature of the market necessarily affects the determination. In this case, we are concerned with the retail restaurant equipment market. It is a consideration of this market which will determine the standard in this particular case for whether reasonably equivalent value has been given.

Appellants concede that "the courts must determine whether fair consideration was received for any given transfer based upon all the factors that make up such a determination within the confines of each and every questioned sale." Appellants' brief at 19. Yet the appellants proceed to argue that the bankruptcy court has established a blanket rule which is not only unworkable but also inequitable. The bankruptcy court's decision that reasonably equivalent value was not given in this case unless a 30% markup was charged does not attempt to set a hard and fast rule to be applied in all situations. Rather, this decision is unique to the circumstances of this case.

In addition, appellants contend that the debtor received a 10% markup on sales to Anderson entities during the year in question. They state that the trustee's Exhibit No. 52, which consists of the debtor's actual invoices, "clearly show that the debtor charged Anderson entities a 10% markup...." Appellants' brief at 22. An examination of these invoices clearly reveals that this conclusion is the result of considering only those invoices which showed a percentage of markup being charged and ignores the invoices showing no markup at all. A simple mathematical calculation reveals that the average commission charged on the total sales evidenced by those invoices is in fact less than 7%.

At trial there was ample testimony regarding the markups charged to Anderson-related entities including testimony that some sales were made at a loss. Evidence was introduced to the effect that non-Anderson entities had, on at least two occasions, paid markups of 29.57% and 80.03%. (Judge Baker's findings of fact. The reported version of this opinion contains an error and states the percentages as 29.57% and 10.03%. *See* 41 B.R. at 478.)

Further, appellants contend that Judge Stewart failed to consider factors such as

lack of freight charges, sales tax, service warranties, sales commissions, and the availability of volume discounts and factory rebates in the determination of what "value" was given. It is apparent, however, that Judge Stewart did evaluate the testimony which discusses the factors that are here argued by the appellants. 74 B.R. at 142–43. This testimony was considered by the bankruptcy judge and given the weight he felt it deserved.

Finally, appellants argue that there has been a miscalculation in the amount of recovery awarded. This argument centers on the fact that Judge Baker had previously awarded the trustee recovery under § 542(b) for goods transferred to the defendants just prior to the debtor filing its petition. The debtor's ledger card showed the amount owing to be $20,208.00. Judgment was entered for this amount. In the proceeding before Judge Stewart, this amount was included in the $75,206.46 figure which represented the total transfers made during the year immediately preceding the filing of the petition on which the trustee was seeking recovery of the 23% additional markup. The appellants argue that Judge Baker's entry of judgment in favor of the trustee for the $20,208.00 constituted a final judgment that is conclusive as to the "value" of the goods transferred. However, clearly the entering of a judgment for the balance showed owing the debtor does not constitute a final judgment as to whether "reasonably equivalent value" has been received by the debtor. It merely allowed the trustee to collect an amount shown as a debt on the ledger sheets of the debtor and was not a judicial determination of the "value" of the goods transferred.

■ The Bankruptcy Code provides: "an entity that owes a debt that is property of the estate and that is matured ... shall pay such debt to, ... the trustee." 11 U.S.C. § 542(b). Entry of judgment for the face amount of the debt shown on the books of the debtor does not protect the transaction from the avoidance powers of the trustee since no independent determination of value was made. Thus, the trustee in this case is not prevented from seeking an additional 23% markup.

Next appellants point out that Judge Stewart was in error in stating "the amounts on which the trustee bases her recovery include no amount transferred on July 22, 1981, the date on which Judge Baker found the $20,208.39 transfer to have been made." 74 B.R. at 144. The court concedes that this statement was in error. However, in view of the courts ruling above that the trustee was justified in seeking an additional 23% markup on these transfers this error would not affect the ultimate judgment entered.

Again, the appellants assert that the court erred as a matter of law in applying a strict percentage without considering all elements affecting the value which the debtor received. Further, that the court erred in failing to give deference to the business judgment of the debtor. Appellants insist that a businessman must be allowed some freedom to determine when and to whom sales may be made for more or less than what might be an "average markup." Appellants' brief at 27–28. The court tends to agree with this assertion in a normal situation. However, one must consider the context in which this case is before the court. Here we are dealing with a bankruptcy in which the trustee is attempting to gather the assets of the debtor estate for the benefit of its creditors. The court is not presuming to set an industry wide standard that in all sales of restaurant equipment a 30% markup must be charged. The court is merely making the determination that in *this case* the debtor did not receive reasonably equivalent value for the questioned transfers.

The picture that emerged in this case showed that the debtor was essentially a captive of Anderson and his enterprises. Further, that the purpose for the debtors existence was to provide Anderson entities with ready access to equipment at cost or "just above" cost. To a large extent there was common ownership and control over the debtor and the corporate respondents which was in the hands of the individual defendants. *See* 61 B.R. 751–52. The

debtor never made a profit partly due to its "funneling" equipment to the Anderson entities without charging a sufficient markup to recoup operating expenses.

■ In this context the court feels that it is appropriate to make the determination that the debtor did not receive reasonably equivalent value for the questioned transfers when they were made at less than cost plus a 30% markup. These were not small individual transfers made to separate businesses. Nor was this a single incident to curry the future business of the appellants. This was a continuous stream of transactions extending from the creation of the debtor corporation to its ultimate filing of bankruptcy. All the questioned transfers were made with less than the average markup to the Anderson entities under circumstances that show both the debtor and the transferee were largely under the control and dominion of Mr. Anderson.

## USE OF SALES THAT WERE OUTSIDE THE ONE YEAR PERIOD TO ESTABLISH THE PERCENTAGE OF MARKUP

The court has previously discussed the percentage of markup charged to the appellants and believes that there was ample evidence in the record and exhibits from sales made within the year preceding the bankruptcy petitions filing on which the lower court could base its finding that an average 7% markup was charged to the Anderson entities. We cannot say that this factual determination was clearly erroneous.

However, it seems unclear from the record whether certain amounts should have been included for purposes of calculating the recovery. In particular, appellants challenge the inclusion of items two and four of Judge Stewart's opinion. 74 B.R. at 145. Specifically, the court has some concern over the inclusion of the Star Metal invoice in the amount of $1,424.00 (Tr. Vol. II at 177–78) as it appears that it may have been on the debtor's ledger (Invoice No. 6560 in the amount of $1,424.60, Trustee's Exhibits No. 21 & 52) as having occurred on October 21, 1980, which would not be within the year next preceding bank-

ruptcy. Appellants present a similar argument based on the $13,855.00 amount which is included. This may be covered by Judge Stewart's discussion on sales which were not placed on the ledger of the debtor. *See* 74 B.R. at 142 n. 13 and 144. However, in light of the remand the bankruptcy court may wish to particularize their findings as to this amount.

Next, the court has a similar concern over the inclusion of at least a portion of the $560.60 in Item 4. Appellants point to language in the transcript indicating that at least $270.00 of this amount did not occur in the year next preceding bankruptcy. Tr. Vol. II at 177. The bankruptcy court on remand may wish to examine this more closely.

## § 542(b) AS AN ALTERNATIVE GROUND FOR RECOVERY

The court finds it unnecessary at this point to address the argument of appellants that § 542(b) is not a proper ground for recovery. The court finds that the bankruptcy court was correct in allowing recovery under § 548. Such a finding makes it unnecessary to address appellants' arguments as to § 542(b). With respect to inclusion of the figures discussed above the bankruptcy court on remand may wish to explore the possibility of recovery under this section if it deems that recovery of the above mentioned figures cannot be had under § 548.

## RECOVERY BASED ON AN ACCOUNTS RECEIVABLE LEDGER NOT ENTERED INTO EVIDENCE

Appellants argue that recovery was improperly allowed based on a separate accounts receivable ledger for Gonzales and Gertrude's showing a balance of $65,000.00 which was never shown by the trustee to exist. Although there does appear to be contradictory evidence as to whether there ever was a separate ledger from Gonzales and Gertrude's, (Tr. Vol. II at 171; Appellant also points out that Trustee's Exhibits 52 and 21, which is a compilation of 52, show Gonzales and Gertrude's invoices entered on Port City's ledger.), Mr. Eads testified several times that there was a different ledger card, i.e. other than the one

introduced as Trustees' Exhibit No. 21, which showed a balance owed by *Anderson Entities* to the debtor in the amount of $65,000.00 to $70,000.00. Tr. Vol. I at 173–177. Judge Stewart in judging the credibility of the witnesses made the determination that $65,000.00 was "owed by Gonzales and Gertrude's *or other related entities*." 74 B.R. at 144. (emphasis added). On appeal it is important for the reviewing court to remember that the bankruptcy judge as the trier of fact is in the best position to judge the credibility of witnesses. This court cannot say that such a determination was clearly erroneous.

## PERSONAL LIABILITY OF THE DEFENDANTS

■ Appellants contend that the bankruptcy court erred in holding the defendants individually liable when the questioned transfers were made to corporate entities. On this point Judge Stewart found the individual defendants to be the "Anderson-related entities who benefited from the transfers." 74 B.R. at 145. Further, that "the defendant, Bruce Anderson, volunteered testimony which identified the named defendants with the transferee entities and which also demonstrated that these entities were utilized as the defendants' mere instrumentalities." *Id.* After reviewing the testimony, Judge Stewart concluded that: 74 B.R. at 145.

> "this testimony, and that previously adduced, clearly shows the defendants to be so intertwined with the nominal transferees that the transfers must be regarded as having been for their benefit. 'Where a corporation is no more than an instrumentality of [other entities] ... it is appropriate to treat the [other entities] as titleholder[s] of the corporation's property.'"

74 B.R. at 145. Citing 4A Collier on Bankruptcy § 70.15[2], p. 138, n. 14 (1978).

It is appellants' contention that "the right of a trustee to succeed to any right the shareholders or directors of a corporation may have against corporate officers 'extends only to the limits of misconduct' and not to 'all debts of the corporation.'" The appellants argue that the same reason which prevents a trustee from bringing on alter ego action on the part of creditors should prevent the trustee from asserting the rights of a corporation to bring an action against directors or shareholders absent some specific showing of misconduct. Appellants' brief at 38–39.

The action at hand differs considerably from an alter ego action in which the trustee attempts to *pierce the corporate veil of the debtor corporation* on behalf of the creditors of the debtor. Here the debtor corporation is in effect the "creditor." The trustee is attempting to disregard the transferees' corporate status. The trustee is not attempting to hold the debtor's corporate officers liable for the debts of the corporation. This is an important distinction, although because of the intermingling of the ownership and control of the debtor and the transferee corporations the same individuals will ultimately be held liable, this action is premised on a different theory of liability.

Under 11 U.S.C. § 550 the trustee is allowed to recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550. In this case the value of the property which the trustee is seeking is the lost markup.

The trustee cannot recover "against one who has not received any property or benefit from the debtor or his transferee, immediate or mediate." 4 Collier on Bankruptcy § 548.07(5), p. 548–86 (15th Ed.1986). However, "[w]hen the proof is sufficient to support a finding of an actual principal-agency relationship or other participation in the transaction by the defendant, it seems that the court should find no difficulty in piercing the forms of dealings in order to enable the trustee to recover from the party properly responsible." *Id.*

Transactions between corporations having directors or officers in common are subject to close scrutiny. 18B Am.Jur.2d *Corporations* § 1760. The corporate form

"is to be disregarded only if the corporate structure is illegally or fraudulently abused to the detriment of a third person." *Thomas v. Southside Contractors, Inc.*, 260 Ark. 694, 543 S.W.2d 917 (1976) (citing *Rounds & Porter Lumber Co. v. Burns*, 216 Ark. 288, 225 S.W.2d 1 (1949)). *See generally* 18 Am.Jur.2d *Corporations* § 42. In light of Judge Stewart's finding that the transferee entities were used as mere instrumentalities by the defendants this court believes it is proper to set aside the corporate formalities and hold appellants individually liable.

**11 U.S.C. § 547**

Finally, appellants assert that the Bankruptcy Court's holding in AP–884 was erroneous and should be reversed. Adversary proceeding 884 was an action to recover preferential transfers. This same argument was before this court in the appeal from Judge Baker's ruling. However, this court did not make clear in its opinion the disposition of this matter. Therefore, after a careful review of the record concerning the preference action, we, with the apparent agreement of the Eighth Circuit, affirm the Bankruptcy Court's judgment in that matter. *See In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1224 n. 6 (8th Cir.1987). Appellants at this point attempt to assert under 547(c) an exemption to the trustee's avoidance powers to which McIlroy Bank was, at least in appellants' estimation, entitled. However, the general rule is that a federal appellate court will not consider an issue that was not passed on by the lower court. *Morrow v. Greyhound Lines Inc.*, 541 F.2d 713 (8th Cir. 1976).

■ Furthermore, the defenses under section 547(c) to the trustee's avoidance powers are affirmative defenses and the burden is on the creditor to establish them. *Brown v. First Nat. Bank of Little Rock*, 748 F.2d 490 (8th Cir.1984); *DeAngio v. DeAngio*, 554 F.2d 863 (8th Cir.1977). "A defense that has not been raised in a pleading, by motion, or at trial normally will be considered waived and cannot be made the subject of an amendment after judgment or be heard for the first time on appeal." Wright & Miller, *Federal Practice and Procedure: Civil* § 1394 and cases cited thereunder. For the above stated reasons, this court will not hear for the first time on appeal appellants' argument that it is entitled to an exemption under § 547(c).

**CONCLUSION**

This court affirms the Bankruptcy Court's finding that the debtor received less than reasonably equivalent value for the transfers in question and its award of the additional 23% mark up. However, it appears that there may be some miscalculations in the amounts on which recovery was based. Therefore, for this reason, the case is remanded for further examination of the figures included and the calculations involved. In particular, as the court has previously discussed, the totals in items two and four of the court's calculations on which recovery was based. 74 B.R. at 145. If the court finds that certain of these items cannot be included in the calculations under § 548 because they are not found to be within the year next preceding bankruptcy, the court may wish to explore the alternative possibility of recovery under § 542(b) and particularize its findings.

Further, the court believes that there is an error in calculation on Item one. 74 B.R. at 145. The trustee sought recovery of the additional 23% markup on the sales totaling $75,206.46. The court allowed 23% on $70,286.41, which represents the total sales, $75,206.46 less the 7% markup already charged. This subtraction of the markup already charged skews the figures and results in the trustee receiving less than the full 30% markup which the bankruptcy court held was necessary to constitute reasonably equivalent value. The recovery should be calculated to give the trustee 23% of $75,206.45 or $17,297.49. This calculation should be corrected on remand. The case is therefore remanded for further proceedings consistent with this opinion.

A separate order in accordance herewith will be concurrently entered.