FLOYD R. GIBSON, Senior Circuit Judge.
This is an appeal from the judgment of the United States District Court for the Western District of Arkansas affirming the bankruptcy court in this Chapter 7 Bankruptcy case. For the reasons stated below we affirm in part and reverse and remand in part.
I. BACKGROUND
In 1980 Bruce Anderson and Elmer Dale Yancey bought Ozark Restaurant Equipment Company. Each owned fifty percent of the stock and held positions as directors. Kenneth Eads also served as a director and as president and was largely responsible for the daily operations of Ozark.
Anderson, Yancey, and Eads also owned stock in Anderson Cajun’s Wharf. Anderson was the majority stockholder and chief operating officer and Yancey served as a director. Anderson Cajun’s WTiarf had a subsidiary named Port City Equipment Company which sold restaurant equipment. Other related entities included Cajun’s WTiarf in Nashville, Cajun’s Wharf in Knoxville, Port City Seafood Company, and Gonzales & Gertrude’s. Anderson was the majority stockholder in each of these corporations.
From the beginning, Ozark was grossly undercapitalized with capital of $1,000 and liabilities of $109,000. Its fortunes never improved and on August 24, 1982 Ozark filed for relief under Chapter 7 of the Bankruptcy Code. In October 1982 the Chapter 7 trustee filed three adversary proceedings in the bankruptcy court. The first proceeding was an alter ego action brought by the trustee on behalf of all *344 creditors against Anderson, Yancey, Eads, Anderson Cajun’s Wharf, and Robert Whiteley, a business consultant hired by Anderson to help with Ozark’s finances. In the second proceeding the trustee sought to recover an unpaid debt in the amount of $20,208 from Port City Equipment Company. In the third proceeding the trustee sought to recover certain payments made by Ozark on a loan it had with Mcllroy Bank and Trust.
The trustee prevailed on all three claims. In re Ozark Restaurant Equipment Co., 41 B.R. 476 (Bankr.W.D.Ark.1984). The decision on the alter ego claim was reversed by the district court, In re Ozark Restaurant Equipment Co., 61 B.R. 750 (W.D.Ark.1986), and the judgment of the district court was affirmed by a panel of this court. In re Ozark Restaurant Equipment Co., 816 F.2d 1222 (8th Cir.), cert. denied, — U.S. -, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). That issue is no longer relevant to this appeal.
The district court also found that although the trustee has no standing to bring his own alter ego action, he does have power to avoid preferences and fraudulent transfers and therefore, remanded the case back to the bankruptcy court. 61 B.R. at 757.
On remand a hearing was held in which the trustee sought to void certain transactions. Evidence was produced showing that Ozark sold supplies to Anderson Cajun’s Wharf and other related entities within a year before the filing of the petition at a markup of only seven percent. Expert testimony was introduced showing that Ozark could not function without a markup of twenty-five to thirty percent. Also, in two sales to nonrelated entities the markups were 29.57 percent and 80.03 percent. The bankruptcy court, 74 B.R. 139, held that Ozark had not received a reasonably equivalent value for the supplies and allowed the trustee to recover from the transferees an additional twenty-three percent markup.
Finally, the bankruptcy court held that the individual defendants are personally liable for the transfers made to the related entities because they are so intertwined with the related entities that the transfers must be regarded as having been made for their benefit.
An appeal was taken to the district court, 77 B.R. 686, and the piecemeal litigation was finally reviewed in its entirety. The district court held that the transfers to the related entities were not for reasonably equivalent value, that the payments to Mcllroy Bank & Trust were preferences, and that the defendants should be held individually liable.
II. DISCUSSION
A. Reasonably Equivalent Value
Section 548 of the Bankruptcy Code provides, in pertinent part:
(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.
11 U.S.C. § 548 (1982).
Whether a transfer is made for a reasonably equivalent value is a question of fact, In re Roco Corp., 701 F.2d 978, 981-82 (1st Cir.1983), which we will reverse only if clearly erroneous. Appellants argue that the district court erred in affirming the bankruptcy court’s finding that sales of goods at under a thirty percent markup constituted less than reasonably equivalent value. We agree.
After reviewing all the facts and circumstances in this case we believe the courts below placed undue emphasis on some evidence and overlooked other evidence. For example, the bankruptcy court focused on testimony that a thirty percent markup was essential to the debtor’s survival. This analysis is improper. The concept of reasonably equivalent value is a *345 means of determining if the debtor received a fair exchange in the market place for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property. Although the bankruptcy court recognized this principle it did not allow it to control.
Reasonably equivalent value should not be wholly dependent upon the viability of the debtor. For example, suppose two debtors file bankruptcy petitions on the same day. Debtor A is a highly efficient wholesaler capable of making a reasonable profit with a ten percent markup. Debtor B, however, is not nearly as efficient and requires a thirty percent markup in order to survive. If both A and B sell the same product in the same marketplace, it would make little sense for the reasonably equivalent value of the products to be so different. Reasonably equivalent value depends on the market conditions faced by a willing seller and a willing buyer and not on the financial demands of the seller. Of course, in this case we are confronted with sales arranged by insiders, and thus give close scrutiny to the value obtained. It does appear, however, that the totality of the circumstances was not fairly considered in this case.
We also believe that the bankruptcy court placed too little emphasis on the fact that sales to the related entities resulted in no freight charges, service warranties, or sales commissions, and that volume discounts and factory rebates were often available. Each factor reduces the overall cost to the debtor on a given sale and thus reduces the consideration necessary to constitute reasonably equivalent value.
After carefully reviewing the record we believe that the bankruptcy court clearly erred when it required a thirty percent markup. Aside from the testimony about the markup necessary for the debtor to survive, evidence of only two sales to nonrelated entities was produced. Those sales included approximately thirty and eighty percent markups. We conclude that the record before us supports only a twenty percent markup and remand to the district court for the appropriate computation.[1]
B. Preferences
Appellants argue that payments they made to Mcllroy Bank & Trust may not be recovered by the trustee because they were made within the ordinary course of business and thus are not within the trustee’s avoiding powers. See § 547(c)(2).
Before considering this issue, however, we pause to examine the unique procedural path which it has taken. In its initial opinion the bankruptcy court held that the payments were preferences. 41 B.R. at 479-80. This issue was not addressed by the district court, but was mentioned in passing by this court. “Although the district court did not rule on the bankruptcy court’s judgment in the preference action, it appears to this court, after a careful review of the record in light of the applicable law, that the bankruptcy court’s judgment in that action should also have been affirmed.” 816 F.2d at 1224 n. 6. Upon remand, the bankruptcy court considered the judgment on the issue affirmed by implication. 74 B.R. at 141. Finally, the district court affirmed on two grounds: First, the district court agreed with this court that the payments were preferences. Second, the court noted that the bank had not previously raised the argument about payment in the ordinary course of business. Because the bank had neither affirmatively pleaded nor proved a § 547(c) defense, the *346 district court would not consider the defense for the first time on appeal.
We agree with the district court that the bank’s untimely attempt to establish a § 547(c) defense should not be considered. As a reviewing court the district court is not empowered to consider an issue not raised in the bankruptcy court. See Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 724 (8th Cir.1976). It is undisputed that these payments were preferences. If the bank believed that they were also outside the trustee’s avoiding power, it should have made that argument during the initial proceedings before the bankruptcy court.
C. Gonzales and Gertrude’s
Appellants argue that the bankruptcy court erred in allowing the trustee to recover on an accounts receivable ledger for Gonzales and Gertrude’s which was not shown to exist by the trustee. The only evidence of a Gonzales and Gertrude’s ledger came from the debtor’s president, Kenneth Eads and his testimony was vague, inconsistent, equivocal, and unsubstantiated, appellants argue.
Appellants argument amounts to nothing more than an attempt to reargue facts decided by the bankruptcy court. Eads should not be believed, but oddly on this issue the trustee’s accountant, Mr. Kitchens should be, the argument goes. We are not persuaded. Factual determinations made by a bankruptcy court will not be disturbed unless clearly erroneous, In re Reid, 757 F.2d 230, 233 (10th Cir.1985), and appellants have not proved that an error has been made.
D. Personal Liability
Finally, appellants argue that the bankruptcy court erred in allowing judgment against Bruce Anderson and Elmer Dale Yancey personally. The bankruptcy court found that the individual defendants were “so intertwined with the nominal transferees that the transfers must be regarded as having been for their benefit.” 74 B.R. at 145. Once again appellants’ argument amounts to nothing more than a difference of opinion as to what the evidence shows; once again we are not persuaded that an error has been made.
III. CONCLUSION
For the above reasons we believe the district court erred in finding that all transfers with less than a thirty percent markup were for less than reasonably equivalent, and that finding is clearly erroneous. The record supports, at best, a twenty percent markup and we remand for recomputation. In all other respects the order of the district court is affirmed.

. In a related issue, appellants argue that the bankruptcy court erred in allowing the trustee to recover an additional twenty-three percent markup on the goods sold to Port City Equipment Company. In one of the three original adversary proceedings the trustee successfully recovered from Port City an unpaid debt in the amount of $20,208. That final judgment on the issue should be conclusive as to the value of the goods transferred, appellants argue. We disagree.
The trustee brought the adversary proceeding to recover a debt appearing on the debtor’s books. Whether the amount owed was reasonably equivalent in value to the goods exchanged was not litigated at that time and thus the judgment can not be considered conclusive as to value.